Belknap
No. 88-109

THE STATE OF NEW HAMPSHIRE

v.

STEPHEN WHITE

April 7, 1989

*Stephen E. Merrill*, attorney general (*Kathleen A. McGuire*, assistant attorney general, on the brief, and *Steven L. Winer*, assistant attorney general, orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J. The defendant appeals a Superior Court (*O'Neil*, J.) sentence to incarceration following probation violations. For the reasons that follow, we affirm.

The facts of this case are not in dispute. On July 16, 1987, the trial court accepted the defendant's guilty plea for the crime of attempted theft by unauthorized taking and sentenced him to twelve months in the house of correction, with credit for 219 days of pre-sentence confinement, and two years of probation to begin after his release from the house of correction. The trial court's sentencing order included substance abuse counseling and drug testing as explicit conditions of the defendant's probation, but did not include a suspended sentence.

The defendant served his twelve-month committed sentence completely and reported to the department of probation twice in the fall of 1987. Someone at the probation department read and explained to him the terms and conditions of the standard probation form. The form includes the following item: "I understand that if I violate any of the conditions of probation/parole, I will be subject to arrest with the court revoking my probation and imposing a sentence of confinement." The defendant signed a copy of the form.

On November 23, 1987, the defendant's probation officer filed a probation violation report with the court alleging that the defendant had failed to report to the probation office at the proper times and places, failed to notify the probation office of change of address and out-of-state travel, failed to enroll and participate in the required mental health counseling, failed to notify the probation department of arrests, and failed "to be of good conduct, obey all laws and be arrest free."

The court held a violation of probation hearing on February 18, 1988, and found "beyond all doubt that [the defendant] violated his probation in more than one area." The court revoked the defendant's probation and sentenced him to incarceration for two and one-half to five years at the New Hampshire State Prison, with one and one-half years of the minimum and two years of the maximum suspended, consecutive to the defendant's current sentence and not to be brought forward after a period of two years after release. This appeal ensued.

On appeal, the defendant argues that the court's imposition of a term of imprisonment upon his probation violation, when the original sentencing order did not contain a suspended sentence, constitutes an additional term of imprisonment without notice, which violates his constitutional right to due process and the prohibition against double jeopardy. The defendant contends that when a court imposes a sentence of incarceration and consecutive probation, with neither portion suspended, "there [is] nothing for the court to call forward subsequently and no further punishment leviable on the defendant." The defendant also argues that, in his particular case, the court did not contemplate that anything should be done to this defendant upon probation violation, because defense counsel had requested probation "simply as something to further induce Mr. White to try to bring himself around . . . ."

Statutory law authorizes courts to impose fines or imprisonment upon probation violation up to the balance of the maximum which could have been imposed originally. RSA 651:2, VII; *see also State v. Perkins*, 121 N.H. 713, 715–16, 435 A.2d 504, 505 (1981). The issue in this case, then, is whether that statutory provision violates due process or puts defendants in double jeopardy when applied to cases wherein the initial sentencing order did not contain a suspended sentence.

The defendant in this case seems to join claims of violation of both double jeopardy and due process rights under the general assertion that his sentence was "impermissibly augmented." Since federal law provides the defendant no greater rights than State law, we need not undertake an independent federal analysis of his claims. *See United States v. DiFrancesco*, 449 U.S. 117, 137 (1980) (double jeopardy); *Morrissey v. Brewer*, 408 U.S. 471, 480–490 (1972) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973)) (due process).

The double jeopardy claim is not convincing because, at the time the defendant was sentenced, he was placed on probation for two years in addition to being committed to the house of correction

for twelve months. RSA 651:2 provided that he could be placed on probation for up to five years because his crime was a felony, and in the event his probation was revoked, he could be sentenced to imprisonment as authorized in paragraph II of RSA 651:2. When the defendant left the courtroom on July 16, 1987, he knew, or should have known, that he was committed to the house of correction for twelve months, that credit was given for 219 days pre-sentence confinement, and that he was to live under the aegis of the probation department for two years following release from the house of correction. He is presumed also to have known that if his probation terms were found by the court, after notice and hearing, to have been violated, he faced the possibility of further incarceration, not to exceed the limit prescribed by the legislature for (in his case) a class B felony. When he was found in fact to have violated his probation on February 18, 1988, it was not a case where there was no "further punishment leviable" because no part of the original term of commitment had been suspended; it was merely a case where the court took the next step in the original sentencing process which began in July of 1987. The court's jurisidiction had been continued by reason of the provision for probation. Had there been no probation, we would be examining a horse of a different color, and the defendant's argument would be more persuasive.

The "due process" segment of the defendant's argument does not, for a number of reasons, salvage his claim of impermissible augmentation of his sentence. He places great faith upon our discussion of protected rights in the sentencing process as set forth in *Stapleford v. Perrin*, 122 N.H. 1083, 453 A.2d 1304 (1982); *State v. Rau*, 129 N.H. 126, 523 A.2d 98 (1987); and *State v. Ingerson*, 130 N.H. 112, 536 A.2d 161 (1987).

In this case the trial court, having sentenced the defendant to less than the statutory maximum for the crime for which he had pled guilty, and having not levied any fine, retained jurisidiction to limit the defendant's liberty interest further because of the imposition of the two-year probationary period. When probation is imposed, the sentencing function is not ended, however strongly the parties may hope that it has. *Stapleford* stands for the proposition that a defendant whose retained liberty interest is to be revoked in whole or in part is entitled to a due process hearing and the opportunity to be heard to test the State's case against him and to offer evidence in his own behalf in an effort to defeat the revocation. *Stapleford, supra* at 1088, 453 A.2d at 1307. The defendant was accorded such a hearing on February 18, 1988.

In *Rau* the defendant, having pled guilty on November 29, 1982, to burglary and theft, was sentenced to the house of correction for twelve months on one charge, commencement of the sentence being deferred to January 17, 1983. He was sentenced to the State prison on the other charge, with that sentence being suspended. He was placed on probation for two years without notice as to when it was to commence. He was not told whether his two sentences were to be served concurrently or consecutively. Needless to say, when defendant Rau left the courtroom, apart from any applicable statutory provisions, much had been left up in the air. In the parlance of the probation world, Rau was "violated" on May 14, 1985. He claimed at his August 29, 1985 hearing on the violation that the court was without authority to incarcerate him because the term of probation had expired. The judge who had sentenced him originally also presided at the violation hearing and amended the 1982 sentence in such a way as to bring the violation proceeding within the appropriate time frame. In applying the *Stapleford* standard, we found that Rau had been denied due process when the court amended the original sentence. *Rau, supra* at 129–30, 523 A.2d at 100–01. The defendant does not stand in Rau's shoes because it was clear at White's original sentencing that his probation was to commence upon his release from the house of correction. His violation proceeding was begun during the time the court's retention of its sentencing jurisdiction was in effect.

*Ingerson* does nothing to help the defendant, either. In *Ingerson*, the defendant pled no contest to two misdemeanors in the district court. On one she was sentenced to sixty days in the house of correction, suspended; on the second, the case was continued for sentencing. No mention was made as to a triggering mechanism to place in effect the sanctions the court had determined should lie fallow and quiescent. No probation was imposed, and in its absence, the majority of the court found due process wanting because the extent of the defendant's vulnerability to confinement under the two sentences, like Rau's, was left up in the air. *Ingerson, supra* at 114–17, 536 A.2d at 162–63.

The defendant cannot match Ingerson's claim, nor is he entitled to the benefit of the reasoning which underlies the decision in *Ingerson*. Without help from *Stapleford, Rau* or *Ingerson*, the defendant is hard put to establish a due process claim of constitutional dimension. Probation is a tool available to the judiciary in the rehabilitative aspect of the sentencing function. It is designed to set the defendant on a course directed toward integrating him into law-abiding society, but until its term is

560

completed, the defendant is not out of the woods. He is still within the reach of the sentencing arm of the court.

*Affirmed.*

All concurred.