Rockingham
No. 2006-107

THE STATE OF NEW HAMPSHIRE

v.

SCOTT BALUKAS, SR.

Argued: March 15, 2007
Opinion Issued: May 3, 2007

*Kelly A. Ayotte*, attorney general (*Susan G. Morrell*, senior assistant attorney general, on the brief and orally), for the State.

*James T. Brooks*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The defendant, Scott Balukas, Sr., appeals the decision of the Superior Court (*Coffey*, J.) denying his motion to quash the indictments against him. He argues that the State improperly charged his

violations of a protective order as class B felony offenses instead of class A misdemeanors. We affirm.

The record supports the following. Two protective orders were issued against the defendant in the spring of 2004: the first, issued under RSA chapter 173-B (2002 & Supp. 2006), prohibited him from contacting his wife; the second, issued under RSA chapter 169-C (2002 & Supp. 2006), prohibited him from contacting his wife and son. On April 16, 2004, the defendant was convicted of violating the protective order issued under RSA chapter 169-C. On May 22, 2004, the defendant, in violation of both protective orders, contacted his wife and son.

As a result of the defendant's actions on May 22, 2004, he was charged with two felonies for again violating the order issued under RSA chapter 169-C, as well as a misdemeanor for violating the order issued under RSA chapter 173-B. *See* RSA 169-C:21-a, IV(c); RSA 173-B:9, III. The defendant moved to quash the indictments issued for the felony-level violations, arguing that the State erroneously charged the offenses as felonies when they should have been charged as misdemeanors. The trial court ruled that the plain language of RSA 169-C:21-a, IV(c) permitted the State to charge the defendant with class B felonies. Therefore, the trial court denied the defendant's motion to quash the indictments and the jury convicted the defendant on all counts. This appeal followed.

On appeal, the defendant argues that the phrase "offenses under this chapter" as used in RSA 169-C:21-a, IV, refers to the criminal acts underlying a violation of a protective order and not the violation itself. The defendant contends, for example, that when a person previously convicted of violating a protective order issued under RSA chapter 169-C commits and is convicted of simple assault while again violating the protective order, the penalty for assault could be enhanced as an offense underlying the violation of a protective order issued under RSA chapter 169-C. Thus, the defendant argues, he should not have been charged with two felonies because the two subsequent violations of a protective order issued under RSA chapter 169-C did not qualify for the enhanced penalty provision under RSA 169-C:21-a, IV(c). The State argues that under the plain language of RSA 169-C:21-a, IV(c), a subsequent violation of a protective order issued under RSA chapter 169-C is an offense under this chapter and may therefore be charged as a class B felony.

This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Looney*, 154 N.H. 801, 802 (2007). In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.* We do not

consider legislative history to construe a statute that is clear on its face. *Pennelli v. Town of Pelham,* 148 N.H. 365, 368 (2002). RSA 169-C:21-a, provides in pertinent part:

> III. A person shall be guilty of a class A misdemeanor if such person knowingly violates a protective order issued under this chapter. Charges made under this chapter shall not be reduced to a lesser charge, as permitted in other instances under RSA 625:9.
>
> IV. Any person convicted under paragraph III, or who has been convicted in another jurisdiction of violating a protective order enforceable under the laws of this state, who, within 6 years of such conviction or the completion of the sentence imposed for such conviction, whichever is later, subsequently commits and is convicted of one or more *offenses under this chapter* may be charged with an enhanced penalty for each subsequent offense as follows:
>
> > (a) There shall be no enhanced charge under this section if the subsequent offense is a class A felony or an unclassified felony;
> >
> > (b) If the subsequent offense would otherwise constitute a class B felony, it may be charged as a class A felony;
> >
> > (c) If the subsequent offense would otherwise constitute a class A misdemeanor, it may be charged as a class B felony;
> >
> > (d) If the subsequent offense would otherwise constitute a class B misdemeanor, it may be charged as a class A misdemeanor;
> >
> > (e) If the subsequent offense would otherwise constitute a violation, it may be charged as a class B misdemeanor.

(Emphasis added.)

█ We begin by examining the plain language of the statute. A person convicted of violating a protective order issued under RSA chapter 169-C, who subsequently is convicted of one or more offenses under this chapter, may be charged with an enhanced penalty for any subsequent violations. "Offenses" under this chapter plainly applies to offenses under RSA chapter 169-C. Violating a protective order is an offense under RSA chapter 169-C. *See* RSA 169-C:21-a, III. Thus, where an initial violation of a protective order would otherwise be charged as a class A misdemeanor, as provided in section III, a subsequent violation may be charged as a class

B felony, as provided in subsection IV(c). This interpretation of the phrase "under this chapter" in RSA 169-C:21-a is consistent with our previous interpretations. *See, e.g., In re Heather D.*, 121 N.H. 547, 551 (1981).

■ Here, the defendant was convicted of violating the protective order under RSA chapter 169-C on April 16, 2004, and was twice convicted of violating that same protective order on May 22, 2004. Thus, the defendant could properly be charged with two class B felonies for his subsequent violations.

The defendant argues that this interpretation of RSA chapter 169-C renders RSA 169-C:21-a, IV(b), (d) and (e) meaningless. Because subsections (b), (d) and (e) enhance penalties that do not exist under RSA chapter 169-C, we agree that this interpretation renders these subsections superfluous. While generally the legislature is not presumed to use superfluous language, we conclude that it did so here. We do so because to adopt the defendant's interpretation would require rewriting the statute to both omit words the legislature included and to add words it saw fit not to include. The defendant's interpretation would require rewriting the phrase "offenses under this chapter" in RSA 169-C:21-a to "offenses underlying the violation of a protective order," and importing the entire Criminal Code into RSA 169-C:21-a to define which acts constitute crimes underlying a violation of a protective order. Such sweeping changes to the statute are not for this court to make. *See In the Matter of Fulton & Fulton*, 154 N.H. 264, 267 (2006). Accordingly, we reject the defendant's interpretation of RSA 169-C:21-a, and instead construe it in accordance with its plain meaning.

The defendant contends that legislative history supports his construction of the statute. Because the intent of the legislature is plainly enunciated in the words of the statute, however, we need not investigate the legislative history to divine its meaning. *Heather D.*, 121 N.H. at 550.

■ Finally, the defendant argues that violations of protective orders issued under RSA chapter 173-B are always misdemeanors, and construing RSA chapter 169-C to impose different punishments for violating a protective order is illogical. These statutes, however, are in different chapters and address different objectives. Where the legislature includes a provision for enhanced penalties in one statute that it chose not to incorporate in other similar contexts, we presume that it intended the law to have that effect. *See, e.g., In the Matter of Bazemore & Jack*, 153 N.H. 351, 354 (2006).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.