Merrimack
No. 2006-180

THE STATE OF NEW HAMPSHIRE

v.

WENDY RUFF

Submitted: February 27, 2007
Opinion Issued: June 8, 2007

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief, for the defendant.

BRODERICK, C.J. The defendant, Wendy Ruff, appeals her conviction for criminal trespass, RSA 635:2 (Supp. 2006), following a jury trial in Superior Court (*McGuire*, J.) challenging the sufficiency of the evidence. We affirm.

The jury could have found the following facts based upon the evidence presented. Benita Flanders, the defendant's mother-in-law, has resided at 258 North Village Road in Warner since 1992. Her son, Arthur, along with his wife and daughter, lives at the same residence. The defendant is married to another of Benita's sons. The defendant and Benita have had an acrimonious relationship for many years, and the defendant was not welcome at Benita's home.

On the evening of September 23, 2004, Tex Whiting arrived at Benita's home to deliver a message on the defendant's behalf. While Benita and Whiting conversed, the defendant suddenly entered the home unannounced and uninvited. A heated dialogue ensued. Shortly thereafter, Arthur arrived home and immediately interceded. He commanded the defendant to leave, but she refused. The defendant was physically removed from the home several times, but repeatedly managed to force her way back in. When she was removed a final time, she got into her car and left with Whiting. Benita and Arthur locked the door and called the police.

The defendant was charged with criminal trespass and criminal threatening. At trial, she moved to dismiss both charges at the close of the State's case, arguing that the evidence was insufficient to establish all elements of the charged crimes. The trial court denied the motion, and the jury returned a not guilty verdict on the criminal threatening charge and a guilty verdict on the criminal trespass charge. This appeal followed.

The criminal trespass statute provides that: "A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place." RSA 635:2, I. Criminal trespass constitutes a misdemeanor offense if "[t]he person knowingly . . . remains . . . [i]n any place in defiance of an order to leave or not to enter which was personally communicated to him by the owner or other authorized person." RSA 635:2, III(b)(2).

The defendant argues that the trial court erred in denying her motion to dismiss because the evidence was not sufficient to establish that she was ordered to leave "by the owner or other authorized person." RSA 635:2, III(b). She contends that no evidence was introduced showing that Arthur

owned the residence or that the owner authorized him to exclude others from the premises. While she concedes that the evidence established that Arthur had apparent authority to exclude her from the residence, she contends that no evidence established beyond a reasonable doubt that Arthur had actual authority to order her to leave the home. We assume without deciding that an "other authorized person," RSA 635:2, III(b), is one with actual authority. *But see State v. Gaffney*, 147 N.H. 550, 555 (2002) ("Given the repeated orders by individuals in actual or apparent authority to leave the police station, and the defendant's refusal to do so, the evidence was sufficient to support his conviction for criminal trespass.").

Because the defendant challenges the sufficiency of the evidence, she carries the burden of proving that no rational trier of fact could have found her guilty beyond a reasonable doubt. *See State v. Emery*, 152 N.H. 783, 788 (2005); *State v. Littlefield*, 152 N.H. 331, 350 (2005). We view the evidence in the light most favorable to the State and examine each evidentiary item in the context of all the evidence, not in isolation. *Littlefield*, 152 N.H. at 350. When the evidence presented is circumstantial, it must exclude all rational conclusions except guilt in order to be sufficient to convict. *Id.*

During her testimony, Benita referred to the premises as her home. She testified that she had lived at the residence since 1992, and that Arthur and his family also lived there. She exercised dominion over the home in that when she heard a knock on the door that evening, she replied, "Come in." When describing the layout of the premises, Benita made statements of ownership concerning the furniture within it, as well as the abode itself. Benita described the defendant's sudden entry into the residence as "all of a sudden *my door* opened." (Emphasis added.) Further, she explained:

> As you come in the door, you go to the left. That's where the chair and the computer is, my sofa, and then when you go to the other side of the room, you're going into my kitchen, 'cause I have a small trailer, so I was like almost into the kitchen, which was just a step away.

Regarding Arthur, at the time of trial, he and his wife and daughter had lived at the Warner residence for approximately eight or nine years. Throughout his testimony, Arthur referenced the premises as his residence, calling it his "home," and calling the property "my yard" and "our yard." Moreover, when Arthur arrived at the house, he walked in without knocking and repeatedly instructed the defendant to leave the residence in front of Benita, without Benita objecting. When the defendant finally was forced to leave the premises, Arthur called the police.

■ We conclude that even assuming that the evidence would not support a finding that Arthur was the owner, the evidence, viewed in its totality and in the light most favorable to the State, proves beyond a reasonable doubt that Arthur was a long-time resident. Therefore, we must consider whether Arthur's status as a resident would qualify him to be an "authorized person" within the meaning of the statute.

When discerning the meaning of "authorized person," we interpret the term in accordance with our normal rules of statutory construction. *See State v. Balukas,* 155 N.H. 377, 378-80 (decided May 3, 2007). That is, "we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." *Id.* at 378. In addition, "we interpret statutes in the context of the overall statutory scheme and not in isolation," *id.* at 378, and construe the Criminal Code "according to the fair import of [its] terms and to promote justice," RSA 625:3 (1996). "This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Balukas,* 155 N.H. at 378.

■ The term "authorized person" is not defined in the criminal trespass statute. We look to the dictionary for guidance as to its ordinary meaning. *See State v. Kelley,* 153 N.H. 481, 483 (2006) (relying upon dictionary definition to examine meaning of element of crime). The term "authorized" commonly means "having authority : marked by authority : recognized as having authority ... endowed with authority ... sanctioned by authority." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 147 (unabridged ed. 2002). The term "authority," in turn, means "power to require and receive submission : the right to expect obedience : superiority derived from a status that carries with it the right to command and give final decisions . . . ." *Id.* at 146. We also seek guidance from the context of the overall statutory scheme within which the criminal trespass statute is embodied. *See Balukas,* 155 N.H. at 378. The chapter containing RSA 635:2 is entitled "Unauthorized Entries" and, in addition to criminal trespass, it includes such prohibited activity as Burglary, RSA 635:1, Trespassing Stock, RSA 635:3, and Interference with Cemetery or Burial Ground, RSA 635:6. The statutory scheme focuses upon proscribing persons from invading premises in which they have no legitimate purpose. Considering the ordinary meaning of the term and the statutory scheme, we conclude that a lawful resident has actual authority to exclude a non-resident from the home in which he lives, and thus constitutes an "authorized person" under RSA 635:2, III(b). *See* BLACK'S LAW DICTIONARY 142 (8th ed. 2004) (defining "actual authority" to include "authority that the agent reasonably believes he or she has as a result of

the agent's dealings with the principal"). This construction of the criminal trespass statute comports with the fair import of the statute and promotes justice. *See* RSA 625:3.

■ Arthur lived at the Warner home for a number of years. He ordered the defendant to leave in front of Benita, who did not dispute his authority as a resident to exclude non-residents from the home. Accordingly, Arthur was authorized to exclude the defendant, a non-resident, from the premises in which he and his family lived. Thus, the evidence was sufficient to sustain the defendant's conviction. *Cf. State v. Flynn*, 144 N.H. 567, 570 (1999) (circumstantial evidence can establish lack of privilege to enter premises in burglary charge).

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.