Hillsborough-southern judicial district
No. 2007-587

PETITION OF THE STATE OF NEW HAMPSHIRE
(State v. Victor Laporte)

Argued: April 10, 2008
Opinion Issued: May 2, 2008

*Kelly A. Ayotte*, attorney general (*Ann M. Rice*, associate attorney general, on the brief and orally), for the State.

*David M. Rothstein,* deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The State filed a petition for writ of certiorari, *see* SUP. CT. R. 11; RSA 490:4 (1997), challenging an order of the Superior Court (*Groff,* J.) dismissing the indictment against the defendant, Victor Laporte. We reverse and remand.

The record supports the following facts. In May 2004, the Hillsborough County Grand Jury indicted the defendant on one count of endangering the welfare of a child. *See* RSA 639:3, III (2007). According to the trial court's order, the indictment alleged that the defendant "knowingly solicited A.L. . . . who was at the time under the age of 16 years of age, to have sexual intercourse with him."

At the close of the State's case, the defendant moved to dismiss the indictment, arguing that it failed to allege, in accordance with the criminal solicitation statute, that he acted "with a purpose that another engage in conduct constituting a crime." RSA 629:2, I (2007). The trial court granted his motion, ruling that:

> Since the term solicitation is not defined in RSA 639, the statute defining criminal solicitation guides us. RSA 629:2 I provides that "a person is guilty of criminal solicitation if, with a purpose that another engage in conduct constituting a crime, he . . . solicits or requests such other person to engage in such conduct." Therefore, under RSA 639:3, II [*sic*], it must be alleged and proven that the defendant acted with the required criminal intent of, "with a purpose that the other person engage in the criminal conduct." . . . Since the indictment failed to allege this state of mind, the indictment is defective and insufficient and must be dismissed.

The State moved for reconsideration, which the trial court denied, and now seeks a writ of certiorari here. Despite the fact that the trial court referenced RSA 639:3, II in its order, it is clear from the order that the trial court was interpreting RSA 639:3, III.

Certiorari is an extraordinary remedy that is not granted as a matter of right, but rather at the discretion of the court. *Petition of State of N.H. (State v. Giovanni),* 154 N.H. 671, 674 (2007); *see* SUP. CT. R. 11. We exercise our power to grant the writ sparingly and only where to do otherwise would result in substantial injustice. *Petition of State of N.H.,* 154 N.H. at 674. Certiorari review is limited to whether the trial court acted illegally with respect to jurisdiction, authority or observance of the law, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously. *Id.*

■ Here, we grant review because certiorari is the only avenue by which the State may seek relief from an order dismissing a case after jeopardy has attached. *See* RSA 606:10 (2001) (specifying the circumstances in which the State may appeal to the supreme court in a criminal case); *see also Petition of State of N.H. (State v. Johanson)*, 156 N.H. 148, 150 (2007).

The sole issue for our review is whether the trial court erroneously interpreted RSA 639:3, III. We review the trial court's interpretation of statutes *de novo. Petition of the State of New Hampshire (State v. Campbell)*, 152 N.H. 515, 520 (2005). This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Balukas*, 155 N.H. 377, 378 (2007). In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.* We do not consider legislative history to construe a statute that is clear on its face. *Id.* at 378-79. Finally, we do not strictly construe criminal statutes, but rather construe them "according to the fair import of their terms and to promote justice." RSA 625:3 (2007).

RSA 639:3 reads, in relevant part:

> I. A person is guilty of endangering the welfare of a child or incompetent if he knowingly endangers the welfare of a child under 18 years of age or of an incompetent person by purposely violating a duty of care, protection or support he owes to such child or incompetent, or by inducing such child or incompetent to engage in conduct that endangers his health or safety.
>
> . . . .
>
> III. In the prosecution of any person under this section, the solicitation by any person of a child under the age of 16 to engage in sexual activity as defined by RSA 649-A:2, III for the purpose of creating a visual representation as defined in RSA 649-A:2, IV, or to engage in sexual penetration as defined by RSA 632-A:1, V, constitutes endangering the welfare of such child.

The defendant argues that RSA 639:3, III requires an indictment to allege that a defendant's solicitation be "with a purpose that another engage in conduct constituting a crime." RSA 629:2, I. We disagree.

■ First, the plain language of RSA 639:3, III does not incorporate the definition of criminal solicitation in RSA 629:2, I. RSA 639:3, III uses only the term "solicitation," without any modification. Nor does RSA 629:2 purport to define the term "solicitation"; indeed, RSA 629:2, I, provides that a person is guilty of "criminal solicitation" if, with the *mens rea,* he

"commands, solicits or requests" another to engage in conduct constituting a crime. The use of the term "solicits" as one of three alternative means of committing the *actus reus* clearly demonstrates that the terms "criminal solicitation" and "solicitation" are not synonymous. "Criminal solicitation" encompasses both the *actus reus* of "soliciting" and the *mens rea* of having the "purpose that another engage in conduct constituting a crime." RSA 629:2, I. "Solicits" or "solicitation," in contrast, refers solely to the *actus reus*. Accordingly, we look to the plain meaning of "solicitation." *Balukas*, 155 N.H. at 378. The plain meaning of solicitation is "to entice" or "to strongly urge." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2169 (unabridged ed. 2002). Therefore, an individual is guilty of solicitation pursuant to RSA 639:3, III if he entices or strongly urges a child under the age of sixteen to engage in sexual penetration.

■ Moreover, RSA 639:3, III cannot be read in isolation. *Balukas*, 155 N.H. at 378. Reading RSA 639:3 as a whole demonstrates that the conduct defined in RSA 639:3, III is a subset of the conduct criminalized by RSA 639:3, I. RSA 639:3, I, states that an individual is guilty of endangering the welfare of a child "if he *knowingly* endangers the welfare of a child." (Emphasis added.) RSA 639:3, III then defines certain conduct that constitutes endangering the welfare of a child. *See* RSA 639:3, III. Thus, the "knowingly" mental state in paragraph I applies to the conduct defined in paragraph III. Accordingly, an indictment that alleges that a defendant "knowingly" solicited a child under the age of sixteen to engage in sexual penetration as defined by RSA 632-A:1, V satisfies the requirements of RSA 639:3, III.

The defendant mistakenly relies upon our decision in *State v. Paulsen*, 143 N.H. 447 (1999), to support his assertion that a prosecution under RSA 639:3, III requires incorporation of the definition of criminal solicitation in RSA 629:2, I. Although in *Paulsen* we referenced RSA 629:2, I, for guidance in interpreting RSA 639:3, III, we did not rely upon it to determine the elements of the crime of endangering a child. *Paulsen*, 143 N.H. at 450. We looked to RSA 629:2 solely to determine whether a course of conduct could be charged in an indictment under RSA 639:3. *Id.* Thus, contrary to the defendant's assertion, we did not conclude in *Paulsen* that to sustain an indictment under RSA 639:3, III, the indictment must include the language governing criminal solicitation from RSA 629:2, I; rather, we concluded that prosecution under RSA 639:3, III prohibits charging a course of conduct. *Id.* at 450-51. This is different from determining whether a prosecution under RSA 639:3, III for soliciting a child under the age of sixteen to engage in sexual activity requires a purposeful mental state.

■ Finally, the defendant looks to the structure of RSA 639:3, arguing that since the *mens rea* of "purposely" applies to the "duty of care" element under paragraph I and "the visual representation" element under paragraph III, we should also apply it to the "solicitation" element under paragraph III. *See* RSA 639:3, I, III. We disagree.

RSA 639:3, I, generally requires proof that the defendant "knowingly" endangered the welfare of a child. As the defendant correctly notes, the legislature prescribed the culpability of "purposely" for certain elements, but not for others, in RSA 639:3. We conclude that the legislature intended the *mens rea* of "knowingly" to apply to all the material elements except those to which it specifically assigned the higher culpability of "purposely." *Cf.* RSA 626:2, I (2007).

■ In this case, the indictment alleged that the defendant "knowingly" solicited a child under the age of sixteen to engage in sexual penetration. We hold that alleging a *mens rea* of "knowingly" was proper pursuant to RSA 639:3, III and that the trial court erred by granting the defendant's motion to dismiss.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.