Rockingham
No. 2007-536

THE STATE OF NEW HAMPSHIRE

v.

DANTE SILVA

Argued: June 18, 2008
Opinion Issued: November 20, 2008

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Dennehy Law Group, PLLC*, of Salisbury (*James W. Dennehy* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Dante Silva, appeals his conviction after a jury trial in Superior Court (*Nadeau*, J.) on one count of dispensing a controlled drug with death resulting, *see* RSA 318-B:26, IX (2004), arguing that: (1) there was insufficient evidence to convict him; and (2) his rights under Part I, Article 15 of the State Constitution and the Sixth Amendment of the Federal Constitution to confront witnesses against him were violated when the State failed to produce the laboratory technician who tested the victim's blood. We affirm.

The jury could have found the following: On March 14, 2006, the defendant contacted his drug dealer, Jay Simes, in order to buy heroin. They agreed to meet in a parking lot. The victim accompanied the defendant when he drove to the parking lot. Simes sold the defendant two bags of heroin for $55 each, interacting solely with the defendant.

Later that day, the defendant contacted Simes for a second purchase. Simes agreed to sell the defendant heroin and told the defendant he would call him with a meeting location. After a short time, Simes called the defendant and told him to meet him in another parking lot. The defendant, accompanied by the victim, drove to the location where Simes sold the defendant two bags of heroin through the driver's side window. While interacting with the defendant, Simes noticed the victim. Simes did not recognize her and observed only that she was a "small girl [with] dark hair." The defendant did not introduce Simes to the victim, and they did not interact. Simes was unaware that the heroin was for both the defendant and the victim.

At the defendant's residence, he and the victim injected heroin. Early the next morning, the defendant woke up and left for work. Later that morning, he telephoned the victim, who did not answer. The defendant then asked his grandmother to check on the victim. A short time later, someone from the

defendant's residence called the police and informed them that the victim was unconscious and unresponsive. At the defendant's residence, officers unsuccessfully attempted to resuscitate her. She was transported to a hospital where she was later pronounced dead.

One of the responding officers noticed that the victim had "track marks" on her arms. He asked the defendant whether he and the victim had been using drugs. Initially, the defendant stated that they had not, but later he admitted that he and the victim had been using heroin every day for the previous three weeks.

The defendant was charged with one count of dispensing a controlled drug with death resulting, under RSA 318-B:26, IX, which provides that "[a]ny person who ... dispenses ... [certain] controlled drugs ... is strictly liable for a death which results from the injection."

At the close of the State's evidence, the defendant moved to dismiss, arguing that the State had failed to prove that he had dispensed heroin to the victim because they had jointly acquired the drugs. *See State v. Morrison*, 902 A.2d 860 (N.J. 2006). The trial court denied the motion. The defendant was convicted and this appeal followed.

Because the defendant challenges the sufficiency of the evidence, it is his burden to prove that no rational trier of fact could have found him guilty beyond a reasonable doubt. *State v. Ruff*, 155 N.H. 536, 538 (2007). We view the evidence in the light most favorable to the State and examine each evidentiary item in the context of all the evidence, not in isolation. *Id.* When the evidence presented is circumstantial, it must exclude all rational conclusions except guilt in order to be sufficient to convict. *Id.*

To convict the defendant, the State had to prove, among other things, that he "dispense[d]" heroin to the victim. RSA 318-B:26, IX (2004). " 'Dispense' means to distribute, leave with, give away, dispose of, deliver, or sell one or more doses of . . . a drug." RSA 318-B:1, VIII (2004).

The defendant argues that he and the victim jointly acquired the heroin, and that one cannot dispense a drug to another when both persons jointly acquired the drug. We need not decide whether he is correct because the jury was instructed to this effect.

At the defendant's request, the trial court instructed the jury on the "joint possession doctrine" as follows:

> Where two or more people simultaneously and jointly acquire possession of a drug for their own use intending only to share it together, their only crime is simple possession, and one cannot have dispensed to the other. However, that is limited only to the

situation where the people acquire the drug simultaneously at the outset. That is, when the people acquire the drug together at the outset of the transaction.

In determining whether the defendant and the alleged victim jointly acquired possession of the drug for their own use at the outset of the transaction, you may consider whether the relationship between the parties was commercial or personal, the statements and conduct of the parties, the degree of control exercised by one over the other at the time of their transaction, whether the parties traveled and purchased the drugs together, the quantity of the drugs involved, whether one party had sole possession of the controlled drug for any significant length of time, and any other factor you consider relevant.

We will assume, without deciding, that this jury instruction stated the law correctly. Additionally, we assume the jury followed the trial court's instructions, *see State v. Pepin*, 156 N.H. 269, 279 (2007), and, accordingly, that in finding the defendant guilty, the jury found that he and the victim did not jointly acquire the heroin.

■ Viewing the evidence in the light most favorable to the State, a rational juror could have concluded that the defendant and the victim did not jointly acquire the heroin based upon the following: (1) Simes was the defendant's drug dealer; (2) the defendant called Simes to purchase heroin; (3) only the defendant and Simes orchestrated the meetings in order to facilitate the sales; (4) during both sales, Simes interacted only with the defendant; and (5) Simes was unaware that the victim intended to use the heroin.

■ The defendant points out that the victim was present during both drug transactions, withdrew money from an automated teller machine to buy the heroin, and wanted to purchase the heroin. However, the jury could have reasonably concluded that the defendant dispensed heroin to the victim only after acquiring the heroin from Simes. It is not a defense to dispensing a controlled drug with death resulting that the victim was a willing participant in the drug use. *See* RSA 318-B:26, IX(b)(2).

The defendant next argues that he was deprived of his right to confront the witnesses against him under Part I, Article 15 of the New Hampshire Constitution and the Sixth Amendment of the United States Constitution when the trial court: (1) admitted the results of a toxicology report; and (2) permitted testimony of a forensic toxicologist, who did not actually perform the laboratory testing, to introduce the report into evidence.

At trial, the State introduced the expert testimony of Matthew McMullen, a forensic toxicologist from National Medical Services, Inc. (NMS), the facility that tested the victim's blood for toxic substances. McMullen testified that when NMS tests blood samples, "[t]here are a lot of people involved in the process." This is "intentional to have checks and balances in place, to have people reviewing other people's work." In this case, "at least a dozen" people were involved in testing the victim's blood.

McMullen did not, however, perform any of the tests. Instead, he was the certifying toxicologist of the results and he "review[ed] the data from the outcome of all the testing that [NMS] performed, and then . . . sign[ed] off on the report that, yes, this is the correct result on this subject." During his testimony, the State introduced the laboratory report as a full exhibit. We begin our analysis under the State Constitution. *See State v. Ball*, 124 N.H. 226, 232 (1983).

"While the United States Supreme Court has recently modified its Confrontation Clause analysis, *see Crawford v. Washington*, 541 U.S. 36 (2004), we have not adopted, and neither party argues that we should adopt, *Crawford* as applicable to claims under the State Constitution." *State v. Legere*, 157 N.H. 746, 750 (2008). "As neither party argues for the imposition of a different standard, we confine our analysis to the . . . standard [under *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)]." *Id.* at 751.

Under *Roberts*, a prior statement of an unavailable hearsay declarant is admissible if it bears adequate "indicia of reliability," or if there is a showing of particularized guarantees of trustworthiness. *Id.* (quotation omitted). Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. *Id.*

In *State v. Coombs*, 149 N.H. 319 (2003), we considered whether evidence like that at issue here was reliable under the *Roberts* standard. In *Coombs*, the defendant argued that his state constitutional right to confront adverse witnesses against him had been violated when the State introduced blood test results through the testimony of a certifying scientist, instead of the analyst who actually tested the blood. *Coombs*, 149 N.H. at 319-20. In holding that the admission of the blood test and the certifying analyst's testimony did not violate the State Constitution, we stated that "cross-examination of a certifying scientist can effectively substitute for the right to confront the actual analyst." *Id.* Accordingly, we determined that both the blood test and the testimony of the certifying witness were admissible under the State Constitution.

We reasoned that "an analyst who conducts . . . many . . . blood tests each day would almost certainly not remember her performance of a specific test months later." *Id.* "Her testimony, like that of the certifying scientist, would

concern her general knowledge of the . . . [l]aboratory's test procedures and protocols, quality control measures, specific levels of review and chain of custody matters." *Id.* "Thus, in almost every case, the supplemental value of the analyst's testimony would be of negligible significance." *Id.* "Moreover, the certifying scientist's testimony indicated that the laboratory's testing procedures are essentially mechanical and not open to subjective judgment." *Id.*

■ Consistent with this analysis, we hold that McMullen's testimony did not violate the defendant's state constitutional right to confront adverse witnesses. As in *Coombs*, an analyst in this case would be unlikely to remember how specific procedures were performed, or even which specific testing was done. At least a dozen separate analysts performed tests in this case. McMullen was able to explain how the procedures at NMS are generally performed and to explain his general knowledge of lab protocol. Further, he was able to discuss his steps in certifying the results of the tests. As with the scientist's testimony in *Coombs*, this testimony is a sufficient substitute for that of the actual analysts. Because McMullen's testimony established the laboratory report's reliability, it is admissible under *Roberts. See Coombs*, 149 N.H. at 323.

■ The defendant argues that this case is distinguishable from *Coombs* because of the gravity of the offense. This argument is unavailing as the gravity of the offense is irrelevant under *Roberts*.

■ Additionally, the defendant argues that the trial court erred in "fail[ing] to make a particularized determination of guarantees of trustworthiness." We disagree. After the defendant objected to McMullen's testimony, the trial court indicated that it would allow him to testify if the State could "establish a foundation to demonstrate sufficient characteristics of trustworthiness." There was ample evidence from which the trial court could have concluded that McMullen's testimony was trustworthy. The trial court permitted McMullen to testify, and we will assume that in doing so, it made all necessary findings to support its decision. *See Nordic Inn Condo. Owners Assoc. v. Ventullo*, 151 N.H. 571, 586 (2004).

■ ■ We now address the defendant's rights under the Federal Confrontation Clause. Since the United States Supreme Court decided *Crawford*, "[t]he crucial determination as to whether an out-of-court statement violates the [Federal] Confrontation Clause is whether it is 'testimonial' or not." *State v. O'Maley*, 156 N.H. 125, 131 (2007). In *O'Maley*, we considered whether a blood sample collection form and blood test results were "testimonial" under the Federal Confrontation Clause. *Id.* at 139. Drawing guidance from *People v. Geier*, 161 P.3d 104, 139-40 (Cal.

2007), we adopted a case-by-case approach to determine whether an out-of-court statement is testimonial. *Id.* at 139-40.

■ In determining whether an out-of-court statement is testimonial, we consider "the circumstances under which an out-of-court statement is made." *Id.* at 138. "[A] crucial factor in determining whether a statement is testimonial or not is whether it represents 'the documentation of past events' or 'the contemporaneous recordation of observable events.' " *Id.* "[T]wo other factors are also important; the first is whether the statement was prepared in a manner resembling *ex parte* examination" and "the second . . . is whether the statement is an accusation." *Id.* Whether a statement is testimonial is a legal question, which we review *de novo. Id.*

First, the defendant argues that his rights under the Federal Confrontation Clause were violated because he was denied the right "to cross-examine and confront the lab technician who performed the analysis of the blood sample of the decedent." However, we rejected this argument in *O'Maley.*

■ In *O'Maley,* we determined that an expert witness's testimony was non-testimonial when he testified about the results of tests he did not personally conduct. *Id.* at 140. "The results generated from the blood test were neutral, as the tests could have led to either incriminatory or exculpatory results." *Id.* at 139. "Moreover, to the extent that the actual reported test result is deemed to be accusatory, this result was reached and conveyed not through the nontestifying analyst's report, but by [McMullen], the testifying witness." *Id.* McMullen personally reviewed the results to determine their accuracy. At least a dozen technicians were involved in producing the results. No single laboratory technician could have testified about the specific factual circumstances of this case, because no single laboratory technician actually performed all of the tests. As in *O'Maley,* to the extent that any one analyst could have testified regarding the results, that analyst "would almost certainly not remember [his or] her performance of the specific test of the defendant's blood months later." *Id.* at 140 (quotation and brackets omitted). Any such analyst's testimony would have been identical to McMullen's testimony "as it would concern . . . general knowledge of the [laboratory's] test procedures and protocols, quality control measures, specific levels of review and chain of custody matters." *Id.* (quotation omitted).

■ Further, the laboratory report itself was not testimonial. It "did not establish or prove past events and did not look forward to later criminal prosecution"; it merely reported that the blood samples contained morphine. *United States v. Washington,* 498 F.3d 225, 232 (4th Cir. 2007)

(quotations omitted), *petition for cert. filed* (U.S. Dec. 14, 2007) (No. 07-8291). The laboratory report was "not directly accusatory, in the sense that [it] linked the defendant to the crime[]." *People v. Rawlins*, 884 N.E.2d 1019, 1033 (N.Y. 2008), *petition for cert. filed* (U.S. May 9, 2008) (No. 07-10845). Instead, the report established that the victim had heroin or morphine in her body when she died. It did not establish that the defendant had dispensed heroin to her. Considering the circumstances in this case, we hold that the toxicology report was not testimonial hearsay. Therefore, the trial court did not err in admitting McMullen's testimony and the toxicology report.

■ The defendant argues that "[t]he documents and testimony in this case are testimonial because the circumstances under which they are generated are uncertain" and McMullen "merely relied upon the assumption that there are procedures and procedures should work." The defendant's arguments are irrelevant under the *Crawford* analysis. However, we note that the defendant had the opportunity to cross-examine McMullen on these issues.

All issues raised by the defendant in his notice of appeal, but not briefed, are deemed waived. *State v. Hancock*, 156 N.H. 301, 306 (2007).

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.