Sullivan
No. 2008-026

THE STATE OF NEW HAMPSHIRE

v.

JAMES MORAN

Argued: November 12, 2008
Opinion Issued: January 29, 2009

*Kelly A. Ayotte*, attorney general (*Ann M. Rice*, associate attorney general, on the brief and orally), for the State.

*Paul Borchardt*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, James Moran, appeals a ruling of the Superior Court (*Arnold*, J.) bringing forward and imposing nine months of a twelve-month suspended jail sentence. We affirm.

The record supports the following. The defendant was convicted in 2002 of committing an unfair or deceptive trade practice in violation of the Consumer Protection Act (CPA), *see* RSA 358-A:2 (Supp. 2002) (amended 2003, 2004); RSA 358-A:6, I (1995). He was sentenced in 2003 to twelve months in the house of correction, stand committed; restitution; and two years of probation, effective upon release. The defendant was also "ordered to be of good behavior" and prohibited from "own[ing], operat[ing] or manag[ing] a construction or building trades company for 10 years." We affirmed the guilty finding on direct appeal. *See State v. Moran*, 151 N.H. 450, 454 (2004). The defendant did not appeal his sentence. *See id.* at 452.

The defendant began serving his twelve-month sentence in December 2004. He pled guilty to another misdemeanor CPA violation in March 2004 (the 2004 offense). The trial court sentenced him to twelve months in the

house of correction, suspended, provided that "[a]ny suspended sentence may be imposed after a hearing at the request of the State brought within 4 year(s)." The court also ordered two years of probation, restitution, and "good behavior" and, ultimately, that he refrain from "own[ing], operat-[ing], control[ling] or manag[ing] a home contracting business for a period of 10 years."

Although the defendant completed probation for the 2004 offense in March 2006, he remained on probation for the earlier offense. In April 2007, the State moved to bring forward the twelve-month suspended sentence because the defendant had violated the good behavior provision and ten-year proscription on certain types of work; had failed to make timely restitution payments; and had acted "in a managerial capacity of . . . a business registered . . . as a general contractor."

After a hearing, the trial court found "that the State [had] met its burden of proof." For violating the 2004 sentence, the defendant was sentenced to twelve months in the house of correction, stand committed, with three months suspended for a period of ten years. He was further ordered to make restitution and comply with the ten-year prohibition outlined in the 2004 sentence.

On appeal, the defendant argues that the trial court erred by bringing forward and imposing nine months of the twelve-month suspended sentence because: (1) the length of elapsed time exceeded the trial court's authority to suspend incarceration for a misdemeanor offense; and (2) the ten-year prohibition was not a condition of the suspended jail sentence.

I

■ We first consider whether the defendant properly preserved each argument for our review. The State claims that the defendant waived his ability to challenge the suspended sentence by negotiating a plea in 2004. We disagree. In New Hampshire, "consent of the defendant cannot make [an otherwise illegal] sentence legal, regardless of whether that consent was given knowingly, intelligently, and voluntarily." *State v. Burgess*, 141 N.H. 51, 54 (1996).

We find the State's procedural distinction from *Burgess* unpersuasive. It is true, as the State points out, that the instant case is procedurally distinct because it is more accurately described as a collateral challenge rather than a direct appeal. However, because the defendant has asserted that the trial court lacked jurisdiction to deprive him of his liberty, *see Baker v. Cunningham*, 128 N.H. 374, 378 (1986), the legality of imposing his suspended sentence is properly before us on discretionary appeal to the extent that he presented these arguments to the trial court in the first instance. *See* SUP. CT. R. 3 (defining "Mandatory appeal" to exclude "an

appeal from a final decision on the merits issued in an imposition of sentence proceeding"); *State v. Gibbs*, 157 N.H. 538, 540 (2008) (discussing and addressing merits of appeal of imposition of sentence); *cf. Crosby v. Warden, N.H. State Prison*, 152 N.H. 44, 46 (2005) ("[A] defendant's failure to object to a sentence at the time of its imposition does not bar the later filing of an extraordinary writ.").

Although the defendant's first argument was asserted in the trial court, our review of the record shows that his second, concerning the ten-year prohibition, was not. Accordingly, that issue is not preserved for our review, *see State v. Patterson*, 145 N.H. 462, 466-67 (2000), and we turn to the parties' substantive arguments concerning only the challenge to the trial court's authority to suspend a misdemeanor jail sentence.

## II

The parties agree that the relevant statute governing the sentencing court's authority to suspend a misdemeanor jail sentence is RSA 651:20 (2007) (amended 2008). Although we normally "review a trial court's decision to impose a suspended sentence for an unsustainable exercise of discretion," *Gibbs*, 157 N.H. at 540, resolution of the instant dispute requires statutory interpretation, which we review *de novo. Petition of State of N.H. (State v. Laporte)*, 157 N.H. 229, 231 (2008).

"This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Id.* "In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." *Id.* "Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation." *Id.* "We do not consider legislative history to construe a statute that is clear on its face." *Id.* "Finally, we do not strictly construe criminal statutes, but rather construe them according to the fair import of their terms and to promote justice." *Id.* (quotation omitted); *see* RSA 625:3 (2007).

We recognized in *State v. Ingerson*, 130 N.H. 112 (1987), that RSA 651:20 contains no express limit upon how long a sentence may be suspended. *Ingerson*, 130 N.H. at 115. Both parties agree on this point, but dispute its significance.

The defendant argues that the absence of any express time limit leads to various absurd results and, thus, should be rejected in favor of his alternative limiting constructions derived either from the maximum probation periods, *see* RSA 651:21 (2007); RSA 651:2, V (2007), or from adding "the maximum length of incarceration plus the maximum length of probation for the underlying offense." Conversely, the State argues that

this absence signals legislative intent to permit the judiciary to exercise wide-ranging sentencing discretion subject only to constitutional limitations.

We find the absurd results posited by the defendant unpersuasive insofar as they rely upon the premise that the trial court sanctioned perpetual sentence suspension. Much to the contrary, the trial court brought forward and imposed suspended incarceration roughly three and a half years into the four-year period established by the 2004 sentence.

■ Next, we observe that, in order to fashion an appropriate sentence in the interest of justice, the trial court possesses broad, inherent power to suspend a misdemeanor sentence. *See State v. Smith*, 119 N.H. 674, 675 (1979); *State v. Burroughs*, 113 N.H. 21, 22 (1973); *State v. Valrand*, 103 N.H. 518, 519 (1961). While dicta in recent cases might suggest that this authority derives from a legislative grant, *see, e.g., State v. Kierstead*, 141 N.H. 803, 804 (1997); *State v. Farrow*, 140 N.H. 473, 476 (1995); *State v. W.J.T. Enterprises*, 136 N.H. 490, 495 (1992), "[f]rom the earliest times in this state as a matter of practice and precedent it has been assumed that courts had the power to suspend either the imposition or the execution of a criminal sentence." *Valrand*, 103 N.H. at 519. Statutes prescribing the terms upon which a sentence may be suspended confirm this power, *id.* at 520, and may permissibly limit its full exercise, *Couture v. Brown*, 82 N.H. 459, 461 (1926); *State v. Drew*, 75 N.H. 402, 403 (1909); *see also* 2 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 33.22, at 482-83 (2003).

■ RSA 651:20 is the legislative enactment presently governing the judicial exercise of authority to suspend sentences. We have said "that the trial judge, acting under RSA 651:20, . . . [and within its limitations,] may suspend any portion of [an] original sentence while it remains unserved." *State v. Lemire*, 116 N.H. 395, 397 (1976). The legislature may further "circumscribe the court's power to suspend, provided that the sentencing process as a whole complies with the requirements of due process." *State v. Horner*, 153 N.H. 306, 313 (2006); *see Burroughs*, 113 N.H. at 24.

Prior to enacting RSA 651:20, the legislature limited to three years the suspension of a misdemeanor sentence, providing:

> When, in case of a misdemeanor, execution of a sentence to the house of correction is suspended or the case is otherwise filed, a mittimus for the service of the sentence may be issued within three years from the date of the sentence and not thereafter.

RSA 607:12 (1955) (repealed 1973).

With the enactment of the Criminal Code in 1971, Laws 1971, 518:1, the three-year cap was omitted from RSA 651:20, the new statute governing the exercise of suspension authority. We presume that this omission was deliberate. The judiciary has a recognized need for "options to adapt [a] sentence to a particular individual in the manner best suited to accomplish the constitutional objectives of punishment, rehabilitation and deterrence." *Burroughs*, 113 N.H. at 24.

Supporting this presumption is the fact that the legislature amended RSA 651:20 five times since we pointed out the lack of temporal limits in *Ingerson* and prior to the defendant's conviction. *See Petition of State of N.H. (State v. Fischer)*, 152 N.H. 205, 211-13 (2005) (discussing the different versions of RSA 651:20). None of these amendments included temporal limits. *See* Laws 1996, 286:5; Laws 1994, 129:1, 192:5; Laws 1992, 254:13; Laws 1990, 266:3. If we had incorrectly construed the statute in *Ingerson*, the General Court would presumably have clarified the text in the course of the five subsequent amendments. *See In re Eric C.*, 124 N.H. 222, 225 (1983).

■ Contrary to the dissent, we find no temporal limits on the power to suspend within RSA 651:21, the statute which governs the revocation of a suspended sentence. RSA 651:21 does indicate that probation may be imposed "during the time any portion of the sentence remains suspended." RSA 651:21. Imposing probation, however, is but one of multiple sentencing options available to a presiding justice when fashioning a proper sanction, *see id.*; *State v. White*, 131 N.H. 555, 559 (1989) ("Probation is a tool available to the judiciary in the rehabilitative aspect of the sentencing function."). Other options include "order[ing] that the defendant serve [the suspended] sentence in full or in such parts and at such times as is deemed best, . . . [and/or] further suspend[ing] any part not ordered to be served upon such terms and conditions as the court may order." RSA 651:21. Accordingly, RSA 651:21 provides no vehicle for importing into RSA 651:20 the temporal limits upon probation within RSA 651:2, V, as that would be limiting the greater by the constraints placed upon the lesser. *Cf. White*, 131 N.H. at 558 (probation does not mark the end of the sentencing function).

■ Furthermore, the text of RSA 651:20 makes clear that its subparagraphs are the *only* legislative limitations upon the judicial exercise of authority to suspend incarceration. *See* RSA 651:20, I ("Notwithstanding any other provision of law, *except as provided in subparagraphs (a), (b), and (c)*, the sentence to imprisonment of any person may be suspended by the sentencing court . . . ." (emphasis added)). Accordingly, we decline to

read into RSA 651:20 words that the legislature did not see fit to include. *See State v. Gubitosi*, 157 N.H. 720, 724 (2008).

■ Undoubtably, a misdemeanor jail sentence cannot be suspended indefinitely because "fundamental fairness . . . entitles [the defendant] to be informed about the time period in which the trial court may exercise its authority to call forward either [the] conviction or [the] sentence . . . ." *Ingerson*, 130 N.H. at 114. However, the temporal maximum upon *all* suspended sentences "would in our view be . . . a policy area better decided by the legislature." *Id.* at 117. It may so act. Unless and until it does, the trial court's sentencing discretion with respect to suspending misdemeanor incarceration is bounded on a case-by-case basis only by constitutional limitations. *See, e.g.*, N.H. CONST. pt. I, arts. 15, 18.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred; DUGGAN, J., dissented.

DUGGAN, J., dissenting. I agree with the majority that the defendant's argument regarding the ten-year construction prohibition was not pre-served for appeal. I write separately, however, because I disagree that RSA chapter 651 (2007 & Supp. 2008) imposes no limit on the length of time the trial court may suspend a sentence.

"The constitution assigns to the legislature the power . . . to fix the degree, extent and method for punishment." *Doe v. State*, 114 N.H. 714, 718 (1974) (citing N.H. CONST. pt. II, art. 5). "The statutory development of provisions for criminal sentences has confirmed the common-law power of the courts to suspend either the imposition or the execution of a sentence." *State v. Valrand*, 103 N.H. 518, 520 (1961). RSA 651:20 (2007) (amended 2008) provides the trial court with statutory authority to suspend a sentence.

RSA 651:20 is silent, however, as to a time limit for suspension of a sentence. This silence does not mean that no time limit exists. For example, we have previously held that, based on the defendant's due process right, the trial court cannot suspend a sentence indefinitely. *State v. Ingerson*, 130 N.H. 112, 114 (1987). In *Ingerson*, the defendant pleaded no contest to two misdemeanor charges and received a sixty-day suspended sentence condi-tioned upon good behavior. *Id.* at 113. The State moved to impose the suspended sentence two and a half years later. *Id.* We held that "funda-mental fairness, a basis for the defendant's due process right, as provided by part I, article 15 of the New Hampshire Constitution, entitles [the

defendant] to be informed about the time period in which the trial court may exercise its authority to call forward either her conviction or her sentence." *Id.* at 114.

Due process requires advance notice of the outer limits of a defendant's sentence. *See Stapleford v. Perrin*, 122 N.H. 1083, 1087 (1982) ("At the conclusion of the sentencing proceeding, a defendant and the society which brought him to court must know in plain and certain terms what punishment has been exacted by the court . . . ." ). In *Valrand*, we addressed whether the trial court could require the defendant to serve an intermittent sentence. *Valrand*, 103 N.H. at 520. We stated that: "It is conceivable that such a power would be praiseworthy penology but it should be exercised under a comprehensive statute or rule of court which would give some advance notice to the defendant that the power exists." *Id.*

Here, the defendant did not have advance notice as to the upper temporal limit of his sentence. On his misdemeanor conviction, the trial court imposed a twelve-month sentence suspended for four years. In the final year, the State called forward the suspended sentence and the trial court imposed nine months and suspended the remaining three months for ten years. At the time of the original sentencing, the defendant could not have known that the twelve-month sentence could be hanging over him for fourteen years. In fact, until the defendant has served the entire twelve months, the trial court may continue to suspend a portion of the sentence for additional periods of time. *See State v. Sideris*, 157 N.H. 258, 264 (2008). Thus, the defendant still does not know the upper limit of his sentence.

We have only addressed the limits of RSA 651:20 within the context of a due process analysis. *Ingerson* did not address suspended sentences of a determinate length. Instead we stated: "For us to make a determination on review as to a reasonable temporal limit to be applied *in such circumstances as this case* under our constitutional supervisory authority would in our view be an invasion of a policy area better decided by the legislature." *Ingerson*, 130 N.H. at 117 (emphasis added). The issue in *Ingerson*, however, was the trial court's authority to bring forward a suspended sentence indefinitely. That issue required a due process analysis and not statutory interpretation. Thus, we did not interpret the sentencing statutes to determine if the legislature included a time limitation. Here, unlike *Ingerson*, the trial court suspended the defendant's sentence for a specific time — four years. To determine whether this was a legal sentence, we must consider the sentencing statutes as a whole, *see* RSA ch. 651, instead of interpreting RSA 651:20 in isolation. *See Appeal of Pinetree Power*, 152 N.H. 92, 96 (2005) ("We interpret statutes not in isolation, but in the context of the overall statutory scheme.").

Both RSA 651:20 and RSA 651:21 (2007) pertain to suspended sentences. RSA 651:20, I, provides, in pertinent part, "[T]he sentence to imprisonment of any person may be suspended by the sentencing court at the time of imposition of the sentence or at any time thereafter in response to a petition to suspend sentence . . . ." RSA 651:21 provides: "Upon revocation of any suspended sentence the court may order that the defendant serve such sentence in full or in such parts and at such times as is deemed best, may further suspend any part not ordered to be served upon such terms and conditions as the court may order and *may place the defendant on probation during the time any portion of the sentence remains suspended.*" (Emphasis added.)

Reading RSA 651:20 and RSA 651:21 together provides for a limit on suspended sentences. RSA 651:2, V(a) (2007) limits the period of probation: "The period of probation shall be for a period to be fixed by the court not to exceed 5 years for a felony and 2 years for a class A misdemeanor." If the trial court is permitted to place the defendant on probation during the time the sentence is suspended and probation can only be for a period of two years for a misdemeanor, it logically follows that the suspended sentence can only be for a period of time not to exceed two years. Otherwise, RSA 651:20 and RSA 651:21 are inconsistent. *See State v. Wheeler*, 127 N.H. 337, 339 (1985) ("It is well established that where several statutes deal with the same subject matter . . . they should be construed, so far as reasonably possible, not to contradict each other."). Thus, suspending the sentence for four years in this case was impermissible.

This reading of RSA 651:20 and RSA 651:21 finds support in *Jackson v. State*, 541 P.2d 23 (Alaska 1975), where the Alaska Supreme Court held that the five-year statutory restriction on probation also applies to suspended sentences. *Jackson*, 541 P.2d at 26. *Jackson* interpreted the Alaska statute, which provides: "[A] court . . . may suspend the imposition or execution or balance of the sentence or a portion thereof, and place the defendant on probation for a period and upon the terms and conditions as the court considers best." *Id.* at 25. The provision did not contain a time limit for suspended sentences. *Id.* A separate provision, however, provided that probation "shall not exceed five years." *Id. Jackson* looked to the federal probation provision, *see* 18 U.S.C.A. § 3651, which used similar language, to hold that the probation restriction also applies to suspended sentences. *Jackson*, 541 P.2d at 26 (federal cases construing the analogous federal statute held that sentencing court only had authority to suspend sentence when imposing a term of probation). *Jackson* also compared probation and suspended sentences, stating "a suspended sentence carries with it the mental burdens of a period of probation." *Id.*

Similarly, here, although RSA 651:20 does not specifically state a time restriction, RSA chapter 651 must be read as a whole and when doing so, there is a temporal limitation on suspended sentences. *See People v. Schwartz*, 823 P.2d 1386, 1387 (Colo. Ct. App. 1991), *cert. denied*, 823 P.2d 1386 (Colo. 1992) (statute authorizes trial court to suspend misdemeanor sentences even though relevant provision did not specify misdemeanors and was included within the felony sentencing scheme).

Although I agree with the majority that this is an area where the legislature can act, given the legislature's failure to do so for over twenty years since *Ingerson*, I am doubtful it will. The majority relies upon the legislature's inaction in support of its analysis that no statutory limitation exists. The legislature, however, is aware of another sentencing statute with language expressly giving the trial court unlimited discretion, *see* RSA 632-A:10-a, V(a) (2007) (judge may include a sentence of lifetime supervision), and, thus, if the legislature intended this, it could have amended RSA 651:20 to include it.

The majority also relies upon the history of RSA 651:20 in support of its reasoning that no limitation exists. RSA 607:12 (1955) (repealed 1973) included a three-year time limitation on bringing forward a suspended sentence. The legislature repealed RSA 607:12 with the enactment of the Criminal Code. RSA 651:21, however, was also enacted at the same time as the legislature repealed RSA 607:12. Thus, the legislature's enactment of RSA 651:21 addressed the time limitation.

The majority's decision not to adopt a clear rule and instead to read RSA 651:20 in isolation may introduce inconsistency and unpredictability into the sentencing process. Although the trial court has discretion in sentencing, that discretion is not without limitation. "Both the legislature and this court have recognized and accepted the trial court's need for discretion in sentencing decisions." *Ingerson*, 130 N.H. at 115. "It does not necessarily follow, however, that this discretion should be left unbridled." *Id.*

Time limitations create consistency within sentencing. *See* RSA 651:2 (specific time limits). The majority's holding permits one trial court to suspend a misdemeanor sentence, carrying a maximum one-year sentence, for one year, where another court may suspend the sentence for ten years despite similarly situated defendants. In addition, a defendant who elects to have a trial expecting the maximum punishment to be one year in jail, a fine and two years probation, *see* RSA 651:2, will be surprised to learn that his one-year sentence may be suspended for ten years. Moreover, presumably defendants pleading guilty will also have to be advised that their potential exposure is not limited to the alternatives specifically identified in RSA 651:2, but that the trial court also has the authority to suspend the sentence well beyond two years for a misdemeanor and five years for a felony.

The majority notes that the sentencing discretion "is bounded on a case-by-case basis only by constitutional limitations." Indeed, at oral argument the State seemed to recognize such when asked the limits of a suspended sentence in this case. The State opined that it would have been appropriate for the defendant's sentence here to be suspended for ten years at the original hearing. The State acknowledged, however, that based upon the facts of this case, "a defendant could argue that fifteen years on a misdemeanor may be a little excessive," which the State said would amount to a constitutional challenge. Until we have developed a body of case law in this new area, trial courts will have little guidance. In the meantime, trial courts must anticipate our interpretation of the constitutional limitations on suspended sentences. Rather than waiting for us to develop this area of sentencing law through constitutional challenges, I would adopt a bright line rule now that, in my view, is harmonious with the sentencing statutes.

For the reasons stated above, I respectfully dissent.