Strafford
No. 2011-565

THE STATE OF NEW HAMPSHIRE

v.

ANTHONY DILBOY

Argued: February 16, 2012
Opinion Issued: June 29, 2012

Michael A. Delaney, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.

Stephanie Hausman, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. This case is before us pursuant to an order entered by the United States Supreme Court vacating the judgment in *State v. Dilboy*, 160 N.H. 135 (2010) (*Dilboy I*), and remanding for further consideration in light of *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011). *Dilboy v. New Hampshire*, 131 S. Ct. 3089 (2011). On remand, we reconsider only our holding on the Confrontation Clause issue. As to the other five issues, our prior decision in *Dilboy I* remains unchanged. In *Dilboy I*, we affirmed the conviction of the defendant, Anthony Dilboy, on two counts of manslaughter, *see* RSA 630:2 (Supp. 2005) (amended 2006), and two alternative counts of negligent homicide, *see* RSA 630:3 (2007). *Dilboy I*, 160 N.H. at 139. After reconsidering our decision in light of *Bullcoming* and thoroughly reviewing the record, we affirm.

The following facts, relevant to the issue before us, are supported by the record. Additional facts can be found in our opinion in *Dilboy I*. *See Dilboy I*, 160 N.H. at 140-42. On March 7, 2006, the defendant drove through a red light at a high rate of speed and collided with the passenger-side of a Volvo sedan, killing both the driver and the passenger. After the collision, paramedics took a blood sample from the defendant and transported him to Wentworth-Douglass Hospital. At the hospital, four additional blood samples and one urine sample were taken from the defendant. The six samples were tested at the State Police Forensics Toxicology Laboratory (State forensic laboratory), a division of the New Hampshire Department of Safety.

Prior to trial, the defendant filed several motions *in limine*. In one motion, entitled "Defendant's Motion *in Limine*" (MIL), the defendant sought to prevent the State from presenting certain evidence related to the forensic testing of the defendant's six samples. The defendant "anticipated that the State may see [*sic*] to elicit testimony regarding," among other

documents, the transmittal slips, the reports of the lab examinations sent from the department of safety to the Dover Police, and blood test results. In the body of the motion, he explained his objection to the introduction of "blood test results," stating: "It is unclear what documentary evidence the state may seek to introduce regarding the blood test results in this case. . . . [I]t appears 'raw data' will be utilized and the state will seek to introduce not the 'reported value' . . . but rather an interpretation of other, or further, test results." The defendant argued that such documents are testimonial and, without live testimony, inadmissible under the Confrontation Clause.

The State objected to the defendant's motion and also filed "State's Motion *in Limine* Re: Evidence Relied Upon by Experts" (State's Motion), moving to admit evidence relied upon by its expert, Michael Wagner, Ph.D., the assistant laboratory director of the State forensic laboratory. The Superior Court (*Fauver*, J.) held a hearing on December 13, 2007. At the hearing, the trial court heard arguments from the parties on the defendant's MIL and the State's Motion. The State explained that Wagner would give an opinion at trial and would be relying upon blood collection forms "that show when and how the blood samples were collected from the defendant[,] . . . the raw data and the analyst's record of [requesting] the tests." The State also asserted that "defense counsel has filed many motions that . . . address the same subject from different angles . . . and . . . it would be very helpful . . . to ask defense counsel to specify exactly what it is he's talking about." The trial court asked the defendant to articulate his position, and the defendant responded, "I want the ability to cross-examine any evidence that is going to be presented to this jury." The trial court inquired further, explaining that "we're trying to nail it down a little bit for the State." The defendant, without elaborating, maintained that all of the *documents* described in his MIL are testimonial under *State v. O'Maley*, 156 N.H. 125 (2007).[1] The defendant did not, however, specifically argue that Wagner's *testimony* would violate his right to confrontation.

After the hearing, the trial court ruled "that the transmittal slips, the blood sample collection forms, and the blood test results are non-testimonial." The trial court elaborated that "the blood test results are non-testimonial but the interpretation of the results is testimonial." The trial court deferred ruling with respect to the laboratory reports until trial because "[t]he defendant did not submit these forms for the court's review and therefore the court [could not] make a determination at [the] time [it issued the order]." The court did not specifically address whether Wagner's testimony

---

[1] For the reasons articulated in *Dilboy I*, 160 N.H. at 151-52, to the extent that portions of the analysis in *O'Maley* are inconsistent with *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), those portions are no longer good law.

violated the Confrontation Clause. The parties' motions were granted in part and denied in part "consistent with [the court's] analysis."

At trial, the State presented the expert testimony of Wagner. He testified about his job duties, laboratory procedures, and the outcomes of the laboratory tests on some of the defendant's samples. He explained that, as assistant laboratory director, his role is to "review the data[,] . . . the paperwork[,] . . . [the] comments[,] . . . [and] any issue that's involved in the analysis of [a] sample." Although it is unclear from the record who performed the tests on the defendant's samples, Wagner testified that he reviewed the toxicology tests on "specimens that purported to have come from [the defendant]" and that the "laboratory issued results from that analysis." He also explained that "[the laboratory] render[s] a report that demonstrates what we . . . found in [a] particular sample." When asked if he had "also stated some opinions with respect to interpreting the findings of [the] lab on those samples," Wagner replied, "Yes." While testifying, he stated that he had his "original data file" with him and reviewed it during his testimony. However, the file was not admitted into evidence and neither counsel nor the trial court inquired as to what was contained within the file.

The bulk of Wagner's testimony focused upon "the uses, dosages, and possible effects from the use of, or withdrawal from, various drugs." Wagner did not offer an opinion about whether the defendant was, in fact, under the influence of controlled drugs at the time of the collision; nor did he opine as to any effects the defendant may have actually experienced. He did, however, testify about specific symptoms other witnesses had attributed to the defendant. He also testified about the tests "purported[ly]" run on the defendant's samples. While he did not expressly repeat any out-of-court statements of other analysts and at no point identified by name any other analyst from his laboratory, he did testify that certain substances were present in the defendant's blood, stating, for example, that in one blood sample, "we" found trace amounts of Clonazepam and cocaine, as well as a quantifiable amount of Benzoylecgonine, a metabolite of cocaine. At some point after Wagner's testimony, the transmittal slips were admitted into evidence, but the laboratory report letters conveying the test results to the police were not.

The jury found the defendant guilty of two counts of manslaughter and two alternative counts of negligent homicide. The defendant appealed his conviction, arguing six separate errors, including that the Superior Court (*Fauver*, J.) erred in admitting evidence of laboratory test results in violation of the Federal Confrontation Clause. Finding no error, we affirmed.

The defendant then filed a petition for a writ of certiorari with the United States Supreme Court on the Confrontation Clause issue. The Court

granted certiorari, vacated our decision in *Dilboy I*, and remanded for further consideration in light of *Bullcoming*. In *Bullcoming*, the Supreme Court relied upon *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), in holding that the report of a forensic scientist absent from trial was not admissible through the "surrogate" testimony of a different scientist.

 The relevant issue before us in *Dilboy I* was whether the admission of certain evidence at trial violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The "witnesses against" an accused are "those who bear testimony." *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (quotations omitted). The protections of the Confrontation Clause apply, therefore, whenever "testimonial evidence is at issue." *Id.* at 68. A witness's testimonial statements are admissible only if the witness either appears at trial, *id.* at 60 n.9, or is unavailable for trial and the defendant has had a prior opportunity to cross-examine the unavailable witness, *id.* at 53-54. When the evidence at issue is non-testimonial, however, the Confrontation Clause has no application. *See id.* at 68; *see also Whorton v. Bockting*, 549 U.S. 406, 420 (2007).

On appeal in *Dilboy I*, the defendant did not challenge the admission of the transmittal slips. Rather, he contended that the trial court erred in ruling that the blood test results were non-testimonial, and, accordingly, that Wagner's testimony at trial about the test results violated the Confrontation Clause. We assumed that the "test results" about which Wagner testified were testimonial, but nonetheless held that his testimony did not violate the Confrontation Clause because he "generated opinions based upon his review of" those results, and the defendant had the opportunity to cross-examine him regarding his opinions. *Dilboy I*, 160 N.H. at 150. The defendant now argues that "the facts and holding of *Bullcoming* compel a finding that" Wagner's testimony violated his right to confrontation. The defendant asserts that Wagner's testimony "about the test results violated [his] right to confrontation because it communicated the testimonial statements of declarants who [*sic*] the State did not call as witnesses at trial." The State responds that *Bullcoming* is distinguishable and, therefore, is not controlling.

The threshold issue in deciding whether the Confrontation Clause has been violated is whether any "testimonial statements" of a non-testifying witness were admitted at trial. *See State v. Silva*, 158 N.H. 96, 102 (2008). Although in *Dilboy I* we assumed, without deciding, that the testimonial statements of non-testifying witnesses were conveyed through Wagner's

testimony at trial, in light of *Bullcoming*, we believe we can no longer make such an assumption. Accordingly, before we determine whether Wagner's testimony about the blood test results violated the Confrontation Clause, we must address the trial court's ruling that "the blood test results are non-testimonial."

 Although the United States Supreme Court has not yet set forth a comprehensive definition of the phrase "testimonial statements," the Court has given some indication of what qualifies as a "testimonial statement." In *Crawford*, the Court listed examples of "testimonial" statements:

> *ex parte* in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Crawford*, 541 U.S. at 51-52 (quotations and ellipsis omitted). In *Melendez-Diaz*, 129 S. Ct. at 2531-32, the Court explained that sworn documents reporting the results of forensic testing were "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination" and thus fell within the "core class of testimonial statements [described in *Crawford*]." Most recently, in *Bullcoming*, 131 S. Ct. at 2717, the Court held that an unsworn, but signed and certified, forensic report was a testimonial statement. The Court explained that "[a] document created solely for an evidentiary purpose, . . . made in aid of a police investigation, ranks as testimonial." *Id.* at 2717 (quotation omitted).

Undoubtedly, if a forensic report created by a non-testifying analyst had been admitted against the defendant at trial in this case, it would violate the Confrontation Clause under both *Melendez-Diaz* and *Bullcoming*. However, no such reports were admitted. In fact, the trial court never even ruled on the reports because they were not submitted at the pre-trial hearing, and the parties apparently did not revisit the issue at trial. In this case, unlike in *Melendez-Diaz* and *Bullcoming*, the only evidence of forensic testing that came in was Wagner's testimony about the "blood test results."

 As explained above, the trial court ruled prior to trial that the "blood test results are non-testimonial." In its order, the trial court referred to

"blood test raw data," "blood and urine test forms," and "blood test results" — sometimes interchangeably. The trial court did not, however, elaborate on what constitutes blood test results or make specific findings underlying its ruling that the test results are non-testimonial. Moreover, although we review whether a statement is testimonial *de novo*, in this case we have no specific statements to review because the documents, or other evidence, that constitute the "test results" were never submitted into the record. "In the absence of specific findings, a court is presumed to have made all findings necessary to support its [ruling]." *Burke v. Pierro*, 159 N.H. 504, 510 (2009); *see also State v. Samuel*, No. M2009-01192-CCA-R3-CD, 2011 WL 2306034, at *7 (Tenn. Crim. App. June 7, 2011). Thus here, without the "test results" to review, and without any specific findings explaining what the "test results" are, we must assume the trial court made all findings necessary to support its ruling, and that those findings were supported by sufficient evidence. *Burke*, 159 N.H. at 510; *see State v. Michelson*, 160 N.H. 270, 275 (2010); *Bullcoming*, 131 S. Ct. at 2722 (Sotomayor, J., concurring) ("[W]e do not decide whether . . . a State could introduce . . . raw data generated by a machine in conjunction with the testimony of an expert witness."); *Disharoon v. State*, Nos. S11G1880, S11G1881, 2012 WL 1571549, at *2 (Ga. May 7, 2012) (relying upon Justice Sotomayor's concurrence in *Bullcoming* to find no Confrontation Clause violation where the testifying witness was the supervisor of the lab, was closely involved in almost every step of the testing process, and drafted the report).

The lack of a sufficient record similarly precludes our review of Wagner's testimony at trial. For example, although we know that Wagner had his original data file with him, we do not know what the file contained, and whether his testimony was based upon his own understanding of the tests, or whether he was reading or otherwise conveying the testimonial statements of others. And, although the defendant now argues that Wagner's testimony "conveyed statements from others involved in collecting, transmitting, and testing [the defendant's] samples," he does not actually identify any analysts or any statements made by such analysts. The admission of Wagner's statements would violate the Confrontation Clause only if he recited the statements of a non-testifying witness, rather than his own opinions or conclusions based upon his review of the raw data. Indeed, as the State explained at the pretrial hearing, Wagner's testimony was an opinion based upon blood collection forms "that show when and how the blood samples were collected from the defendant[,] . . . the raw data and the analyst's record of [requesting] the tests."

If Wagner's statements at trial about the "results" of the tests were based upon his own review of raw data, such as graphic or numerical computer printouts, his statements may not have been a violation of the

Confrontation Clause under *Bullcoming*. *See Bullcoming*, 131 S. Ct. at 2722 (Sotomayor, J., concurring). However, if at trial Wagner was merely repeating a non-testifying analyst's statement of the "results," his testimony at trial might have been a Confrontation Clause violation. *See id.* at 2717 (determining that a forensic report, which contained test results and was " 'formalized' in a signed document," contained "more than adequate [formalities] to qualify [it] as testimonial").

Ultimately, there is no factual record that supports the defendant's theory of relief. *See Appeal of Bosselait*, 130 N.H. 604, 607 (1988). It is the defendant's obligation to state "explicitly the specific ground of objection," N.H. R. EV. 103, and to provide this court with a record sufficient to decide the issue raised on appeal, *State v. Parra*, 135 N.H. 306, 309 (1992). To now address whether Wagner's testimony conveyed the testimonial statements of others would require us to either (1) speculate about what documents Wagner's testimony was based upon and whether he was testifying based upon his own interpretation of the raw data or merely repeating the statements of others, or (2) assume, as we did in *Dilboy I*, that his testimony conveyed the testimonial statements of others and then speculate as to whether his involvement was sufficiently close to justify his testimony, or whether his opinion was "independent," consistent with the concurrence in *Bullcoming*. Under the circumstances, we see no way to resolve the issue based upon such speculation, especially on an issue of first impression. Accordingly, because it was the defendant's burden to provide us with a record sufficient to decide his issues, we must affirm.

Finally, although the transmittal slips were admitted into evidence, we decline to address the defendant's Confrontation Clause arguments based upon them because the defendant did not address the issue in his brief in *Dilboy I*. Indeed, the defendant did not even brief the issue after the Supreme Court vacated *Dilboy I*, but rather raises the issue for the first time in a supplemental brief filed in response to an order issued by this court. Accordingly, he waived this issue. *See State v. Garcia*, 162 N.H. 423, 435 (2011). We, therefore, affirm.

*Affirmed.*

HICKS, CONBOY and LYNN, JJ., concurred.