# United States Court of Appeals
## For the First Circuit

No. 12-2338

ALLEN SCOGGINS,

Petitioner, Appellant,

v.

TIMOTHY HALL,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Kayatta, Circuit Judges.

Alan D. Campbell for appellant.
Annette C. Benedetto, Assistant Attorney General, Commonwealth of Massachusetts, with whom Martha Coakley, Attorney General, Commonwealth of Massachusetts, was on brief, for appellee.

August 26, 2014

**KAYATTA, Circuit Judge**. Allen Scoggins was convicted of first-degree murder in 1998 and is currently serving a life sentence in a Massachusetts prison. He filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking to invalidate his conviction on the ground that his court-appointed attorney provided ineffective assistance by forgoing the opportunity to interview a prosecution witness, Barbara Holbrook, before trial, and declining to interview or to call at trial any of a number of witnesses who, he claims, could have rebutted her testimony. The district court denied the petition, reasoning that the state court's rejection of the ineffective-assistance claim did not constitute an unreasonable application of the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), for evaluating such claims. We agree, and thus affirm.

## I.  Background

We take the facts largely as recounted by the Massachusetts Supreme Judicial Court ("SJC") decision affirming Scoggins's conviction, supplemented with other record facts consistent with the SJC's findings. See Yeboah-Safeh v. Ficco, 556 F.3d 53 (1st Cir. 2009); see also Commonwealth v. Scoggins, 439 Mass. 571 (2003).

At around 1:20 A.M. on May 16, 1997, a taxicab, its lights on and its engine running, rolled slowly onto a lawn near Wyman Street in Brockton, Massachusetts. Its meter read $3.00, but

the fare would never be paid.  Its driver, Ishmael Rivera, lay dead, mere feet away, after having been shot three times, including once in the face and once in the chest.  A coroner would later report that each shot alone would have been sufficient to cause Rivera's death.

The man who fired the shots, petitioner Allen Scoggins, decamped to South Carolina shortly thereafter.  While there, he spent time with his uncle, Vernon Campbell ("Campbell"), and Campbell's then-girlfriend, Barbara Holbrook. And although Scoggins was indicted for first-degree murder in June of 1997, he managed to evade detection until August of that year, when Holbrook went to the police to file a domestic-violence complaint against Campbell. Either while or soon after filing the domestic-violence complaint, Holbrook told police that she knew of Scoggins's whereabouts and that Scoggins told her that he murdered Rivera in an attempted armed robbery gone wrong.  Scoggins was detained soon afterwards.

While in custody, Scoggins confessed that he was Rivera's final fare and that when he entered Rivera's taxicab, he carried with him a loaded, borrowed gun. He further admitted that he brandished the gun after Rivera made a wrong turn, and that the gun he carried and brandished was the same gun that killed Rivera. Though he claimed he was intoxicated at the time of the shooting and could not remember everything that transpired, he was adamant

that he acted in self-defense.  He also said that he was sorry for taking Rivera's life.

At trial, Holbrook testified that when Scoggins was in South Carolina, Scoggins lived with his cousin Annette Campbell, and would often play cards with Campbell and Holbrook.  She further testified that over a game of cards between Holbrook, Scoggins, Campbell, and another cousin, Jermaine Campbell, at the home of a friend named Pam Price, Scoggins "talked about the murder," saying "that he called a cab to go -- he didn't say a [specific] destination. He was going to stick up the cab driver.  The cab driver got scared, tried to call the police; but the cab driver was going to jump out the car.  And [Scoggins] just got scared, and he jumped out the car and shot him."  She also said that Scoggins "[j]okingly" suggested that he "couldn't take cabs anymore."

On cross, Holbrook fared poorly.  She partially recanted portions of her statement to the police -- and portions of her testimony.  Specifically, she conceded that several statements by Scoggins that she previously testified had been said in her presence had instead been relayed to her by Campbell.[1]  Holbrook did not, however, recant all of her testimony.  She also did not

---

[1]  Holbrook said that Campbell, not Scoggins, told her that Scoggins brought the gun that he used in the murder down to South Carolina and that Scoggins had not been alone in the cab.  She further denied -- contrary to the statement she had given police -- that she ever directly asked Scoggins whether he was the one who killed Rivera.

-4-

concede that everything she said Scoggins said had been reported to her by others.[2]   In his closing argument, Scoggins's counsel exploited Holbrook's shaky performance, telling the jury, "Barbara Holbrook, I thought to put her before you as a credible witness is an insult to your intelligence.  This girl had no . . . idea of what was going on . . . .  She adopted everything anybody said to her.  I asked her, 'Did you say that?' 'No.  I heard it from Vernon Campbell.' 'Well, didn't you read the statement?  You said he did, or he didn't.' . . . 'Well, I did, but I didn't say that.  Vernon Campbell said that.'"  Ultimately, he asked the jury, "[w]ould you want to trust your future, and the fate of your family to Barbara Holbrook?  Is that the kind of witness you want to rely on to convict somebody of first degree murder -- because of Barbara Holbrook?  I think not."

The jury found Scoggins guilty of first-degree murder on theories of premeditation and felony murder, and Scoggins received a life sentence.  Represented by new counsel, Scoggins appealed.  In that appeal, he also filed a 50-page pro se brief in which he raised the argument, raised here, that trial counsel should have interviewed and brought to testify Campbell, Price, and Jermaine Campbell.  However, neither Scoggins nor his appellate counsel

---

[2]   Specifically, the ambiguous testimony on cross did not compel a finding that Holbrook recanted her claim that Scoggins said that he planned to stick up the cab driver, and, further, that Scoggins shot the driver.

advanced the argument, also raised here, that Scoggins's trial counsel should have interviewed Holbrook before trial. The appeal failed.

After filing a timely habeas petition and securing a stay, Scoggins commenced an effort to secure collateral review in state court by filing a second motion for new trial. In that motion, Scoggins first presented the argument that trial counsel was ineffective for having failed to interview Holbrook. In support of that argument, Scoggins included an affidavit from Holbrook claiming that, had she been interviewed prior to trial, she would have told Scoggins's attorney that she "did not hear Mr. Scoggins make any statements about this case." Rejecting that argument, the Massachusetts Superior Court expressly found that "the doctrine of waiver bars the defendant's current claims." Adding belt to suspenders, the court further found that counsel's decision not to interview Holbrook was not manifestly unreasonable, and thus could not support an ineffectiveness claim. Finally, the court found Holbrook's affidavit to be incredible, noting among other things that it directly contradicted the testimony that she gave at trial.

After unsuccessfully appealing the denial of his second motion for a new trial, Scoggins returned to his stayed action in the district court, pressing the arguments he now presses on appeal. The district court denied the petition, but issued a

-6-

Certificate of Appealability on Scoggins's claim that trial counsel's failure to interview Holbrook, and failure to interview or call at trial Campbell, Price, and Jermaine Campbell, constituted ineffective assistance.  See 28 U.S.C. § 2253(c). Scoggins appealed.  We have jurisdiction under 28 U.S.C. § 2253(a).

## II. Review of Strickland claims under AEDPA

Scoggins argues that the state court proceedings violated the Sixth Amendment both because his trial counsel neither interviewed Holbrook before she testified nor contacted Campbell, Price, or Jermaine Campbell to rebut her testimony.  To prove a Sixth Amendment violation based on the failings of defense counsel, a petitioner must demonstrate both "(1) that 'counsel's performance was deficient,' meaning that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment'; and (2) 'that the deficient performance prejudiced the defense.'"  United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).  In assessing the adequacy of appointed counsel, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," see Strickland, 466 U.S. at 689, finding deficiency only "where, given the facts known [to counsel] at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it."  Knight v. Spencer, 447

-7-

F.3d 6, 15 (1st Cir. 2006) (internal quotation marks omitted). And, to establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Adding more to Scoggins's burden in this case are the limitations on our review imposed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs the standards by which we review collateral attacks on state-court convictions. That provision, "designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions," see Harrington v. Richter, 131 S. Ct. 770, 787 (2011), authorizes us to reverse a state court's adjudication of the merits of a petitioner's legal claim only where the state-court adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Scoggins rests his claim on the argument that the state court's adjudication resulted in a decision constituting an "unreasonable application" of federal law. He therefore must

demonstrate "that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87. Additionally, to the extent that Scoggins's constitutional arguments depend on factual premises the state court rejected, we are required by statute to "presume[] . . . correct" the state court's factual determinations, leaving to Scoggins the weighty "burden of rebutting the presumption of correctness by clear and convincing evidence." See 28 U.S.C. § 2254(e)(1); see also Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000). In short, we do not lightly undertake to substitute our judgments for those of the courts of the various sovereign states that fall within our jurisdiction, see, e.g., Coleman v. Thompson, 501 U.S. 722, 748 (1991) ("Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.") (internal citation, alteration, and quotations marks omitted), and our review of their work is particularly deferential when the question is counsel's effectiveness. Richter, 131 S. Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.") (internal citations and quotation marks omitted).

### III. Analysis

We address first Scoggins's claim that Campbell, Price, and Jermaine Campbell, if called, could have "contradicted" Holbrook's testimony by saying that Scoggins never said anything about a shooting of a cab driver in Holbrook's presence. None of these three individuals have themselves so testified or affirmed. More importantly, any such contradiction of Holbrook's testimony would likely have caused the factfinder -- and government counsel -- to ask how Holbrook otherwise could have recounted the details she recounted. A crucial part of her testimony was that Scoggins shot Rivera as or after Rivera exited the cab, which was exactly where the body was found. Either she heard Scoggins say what she claimed he said, or Campbell, et al., told her he said it, or she was extraordinarily lucky in making it up. Only the third, unlikely scenario would help Scoggins; the other two would be harmful.

Campbell, too, twice told police that Scoggins pulled a gun on the cab driver to get money -- precisely the other inculpatory fact to which Holbrook testified. Putting him on the stand as a friendly witness -- he was, after all, Scoggins's uncle -- only to have him possibly tripped up by his prior statements might reasonably have been seen as a big risk, especially when the defense could likely offer no explanation for how Holbrook could know the cab driver was shot outside the cab. Weighing these risks

against the possible (though unlikely) upsides of such a line of inquiry is precisely the sort of task that our adversarial system entrusts to counsel, rather than to the hindsight of a later, reviewing court.  In any event, in order to reject Scoggins's claim under the applicable standards of review, we need only conclude that the state court acted reasonably in determining that defense counsel's decision to refrain from calling Campell, Price, and Jermaine Campbell was not beyond the pale of reason.  Because we have no trouble doing so, we reject Scoggins's claim that the failure to pursue a line of inquiry involving Price and the two Campbells constituted deficient performance.

The argument concerning the failure to interview Holbrook raises different issues.  Initially, it appears that Scoggins did not timely raise this argument under Massachusetts procedure, and thus waived the argument.  Indeed, this is precisely what the Massachusetts Superior Court held: When Scoggins tried to raise the claim on his second motion for new trial, the court rejected the argument on the ground that it should instead have been brought in his initial motion for a new trial and preserved on Scoggins's direct appeal thereof.  Hence, the state court's rejection almost certainly rests on waiver -- an adequate, alternative state law ground that places the argument's merits beyond the reach of our review.  E.g., <u>Beard</u> v. <u>Kindler</u>, 558 U.S. 53, 55 (2009) ("A federal habeas court will not review a claim rejected by a state court 'if

-11-

the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" (quoting <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 729 (1991))). The respondent, however, makes not a peep about this procedural shortcoming, treating the Holbrook argument as if it is properly preserved. And because we may straightforwardly reject Scoggins's petition on the merits without reference to the state court's reliance on this ground, as that reliance implicates no question concerning our jurisdiction, we need not consider here an argument that the state neglected to raise and to which, as a consequence, Scoggins has had no chance to respond.

Turning to the merits of the argument, we skip over the perhaps puzzling question of why defense counsel did not at least telephone Holbrook to see what she might offer to say. We turn, instead, to the easier question of whether such a call would have made any difference. The record does contain a document signed by Holbrook claiming that, had counsel contacted her, she would have readily informed him that she heard nothing from Scoggins about the case. In denying Scoggins's second motion for a new trial, the Massachusetts Superior Court found this affidavit not credible. The affidavit flatly contradicted both Holbrook's volunteered statements to the police and her testimony at trial, and it offered no explanation for how she could have made up the portions of her testimony in which she recounted subtle details of the crime.

Thus, we simply see nothing in the record that would permit us to determine that the state court was demonstrably wrong to conclude that, of the inconsistent statements Holbrook has given, the one she gave at trial was the truthful one. In light of our deference to the state court's conclusion, Scoggins's assertion that failing to interview Holbrook resulted in prejudice lacks the type of record support that would compel a reasonable jurist to agree. For this reason alone, and even accepting for argument's sake that trial counsel should have at least spoken to Holbrook, the Strickland claim fails. See, e.g., United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012) (reiterating that Strickland claims require a showing both that (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense).

## IV. Conclusion

For the aforementioned reasons, we affirm the district court's denial of Scoggins's petition for habeas corpus relief. So ordered.