# United States Court of Appeals
## For the First Circuit

No. 14-2050

JULIAN CASTLE LOGAN,

Petitioner, Appellant,

v.

BRUCE GELB,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Barron, Circuit Judges.

Dana A. Curhan on brief for appellant.
Ryan E. Ferch, Assistant Attorney General, Criminal Bureau,
and Maura Healey, Attorney General of Massachusetts, on brief for
appellee.

June 15, 2105

**Per curiam**.  Julian Castle Logan (formerly known as Joao Pedro Barbosa Jr.) was convicted in 2007 in Massachusetts state court of living off or sharing the earnings of a minor prostitute in violation of Massachusetts law.  After twice being rebuffed by the Massachusetts Appeals Court, see Commonwealth v. Barbosa, No. 08-P-1620, 2010 WL 680349 (Mass. App. Ct. Mar. 1, 2010) (Barbosa I); Commonwealth v. Barbosa, No. 12-P-37, 2013 WL 1103912 (Mass. App. Ct. Mar. 19, 2013) (Barbosa II), Logan filed a petition for a writ of habeas corpus in federal court in 2013 seeking to invalidate his conviction on a number of grounds.  The district court denied the petition, concluding that none of Logan's arguments satisfied the exacting standards that govern habeas review of a state court conviction.  Logan v. Gelb, 52 F. Supp. 3d 122 (D. Mass. 2014).  We affirm.

I.

On federal habeas review, the findings of fact of a state court "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); see Sumner v. Mata, 455 U.S. 591, 592-93 (1982) (per curiam).  We take the facts as presented by the Massachusetts Appeals Court which affirmed Logan's conviction, Barbosa I, 2010 WL 680349, at *1-2, supplemented with other record facts consistent with the

state court's findings.  <u>Scoggins</u> v. <u>Hall</u>, 765 F.3d 53, 54 (1st Cir. 2014).

On the evening of February 23, 2004, Lawrence Hall, a detective with the Everett police department, was near Beecham Street, an area in Everett known for prostitution activity. Detective Hall witnessed two young women walking down the road, smiling and waving at passing vehicles. He later saw the two young women enter the back seat of a gray Saab convertible that was parked in a nearby lot.

Detective Hall returned to the Beecham Street area the following night, and again observed one of the two young women -- who has been referred to as "Harriet" -- smiling and waving at passing vehicles. Detective Hall saw Harriet get into a large delivery truck. Another Everett police detective, Richard Connor, observed Harriet perform oral sex on the truck's driver while the truck was parked across the Everett town line in Chelsea.

After Harriet left the truck, she talked briefly on a walkie-talkie. A white sedan then arrived, which she entered. Harriet left the white sedan approximately ten minutes later. She then walked over to the same gray Saab convertible from the previous night, which was parked in the same lot as the night before, and got in the car.

Once the Saab pulled out of the lot, Detective Hall radioed for a police cruiser to stop the car. The driver of the Saab, Logan (then known as Barbosa), was promptly arrested. Logan had $1,459 in cash on him at the time. Harriet, who was a passenger in the Saab and who was also arrested, had $32 on her.

The Commonwealth charged Logan with one count of living off or sharing the earnings of a minor prostitute in violation of Mass. Gen. Laws ch. 272, § 4B. His first trial, from August 20 to 22, 2007, ended in a mistrial due to a hung jury. His second trial, from September 3 to 6, 2007, resulted in a conviction.

At the second trial, the Commonwealth relied heavily on the testimony of Detective Hall. Detective Hall testified about his decade-long experience on the police force, during which time he had made more than sixty prostitution arrests. He also noted that he had spent the previous half-decade working mostly on narcotics and prostitution cases. And, after being qualified as an expert, Detective Hall testified that the average price for a prostitute's services in the area at the time of Logan's arrest was $40 to $60 for oral sex and upwards of $100 for vaginal intercourse.

Although Harriet did not testify, a social worker, Rosa Andrade, provided testimony regarding Harriet's age. Andrade

testified that she had worked with Harriet for two years after Harriet's arrest, and that she had helped Harriet with placements, school, and other services. Andrade explained that she works with adolescents and stated that Harriet was an adolescent. Andrade testified that Harriet's birthday was November 21, 1988, and that she was fifteen years old on February 24, 2004, when she was observed by Detectives Hall and Connor. Defense counsel made no objection to this testimony on hearsay grounds or otherwise. Andrade also testified on cross-examination that she had never seen Harriet's birth certificate and that Harriet was born outside of the United States.

Before the close of the defense's case, Logan moved for a required finding of not guilty on account of insufficient evidence of Harriet's minority, an essential element under Mass. Gen. Laws ch. 272, § 4B. The state trial judge, though noting that it was a "close call," denied the motion. After the jury returned a guilty verdict, Logan filed a motion for judgment notwithstanding the verdict, which was also denied. On September 20, 2007, Logan was sentenced to five to eight years in prison.[1]

_____

[1] Logan is currently serving that sentence at the Souza-Baranowski Correctional Center.

Logan appealed and argued, as is relevant here, that there was insufficient evidence to support his conviction. The Massachusetts Appeals Court affirmed his conviction on March 1, 2010. Barbosa I, 2010 WL 680349, at *1. The Massachusetts Supreme Judicial Court ("SJC") denied Logan's application for leave to obtain further appellate review on September 10, 2010. Commonwealth v. Barbosa, 934 N.E.2d 824 (Mass. 2010) (table).

Logan then moved for a new trial in the Massachusetts Superior Court on November 11, 2011. The Massachusetts Superior Court denied Logan's motion, and the Massachusetts Appeals Court affirmed this denial on March 19, 2013. Barbosa II, 2013 WL 1103912, at *1. The SJC again denied Logan's application for leave to obtain further appellate review. Commonwealth v. Barbosa, 989 N.E.2d 898 (Mass. 2013) (table).

Logan next filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of Massachusetts on June 26, 2013. On September 25, 2014, the district court found against Logan on every claim, and ordered the petition dismissed. Logan, 52 F. Supp. 3d at 131-38. The district court did, however, grant a certificate of appealability as to "each of the issues discussed" in its decision. Now on appeal, Logan presses some but not all of the arguments he

made to the district court; he also attempts to raise at least one new claim.

II.

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), sets the standards by which we review collateral attacks of state court convictions.[2] Scoggins, 765 F.3d at 57. Habeas relief may be granted only if the state court's adjudication of the merits of a petitioner's legal claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). See also Scoggins, 765 F.3d at 57.

Further, we ordinarily may not second guess a state court's rejection of a claim on the basis of an independent and

---

[2] Congress enacted AEDPA "to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). AEDPA thus prevents federal courts from overturning state court convictions except where the state proceedings suffered from an "extreme malfunction[]." See id. at 102-03 (citation and internal quotation marks omitted).

adequate state procedural rule.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991).  And our review is precluded where a habeas petitioner has failed to exhaust a federal claim in the state courts.  See Rose v. Lundy, 455 U.S. 509, 515-16 (1982).

A.        Proof of Harriet's Age

Logan argues that the Commonwealth "improperly proved a key element of the charged offense" -- Harriet's minority -- "solely through the use of hearsay."  In this respect, we understand Logan to make two arguments, neither of which is meritorious.

Logan first contends that this reliance on hearsay somehow violated Due Process.[3]  Logan never made a due process argument in any of his state court proceedings; it is thus not properly exhausted under AEDPA.  See 28 U.S.C. § 2254(b)(1)(A).  Logan also failed to include this argument in his habeas petition; it is thus waived as well.  See Companonio v. O'Brien, 672 F.3d 101, 112 n.10 (1st Cir. 2012).  Logan's argument that he received

---

[3] To the extent that Logan has merely dressed his sufficiency argument in due process garb, we remain unpersuaded.  The Appeals Court's decision on the sufficiency of the evidence of Harriet's age was neither contrary to clearly established Supreme Court case law nor based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

ineffective assistance of counsel does not save his waived and unexhausted due process claim in this case.

Instead, we understand Logan to be raising an independent claim that his counsel was ineffective for failing to object to Andrade's testimony regarding Harriet's date of birth on hearsay grounds. Logan did not make this argument explicitly on direct appeal, but did in his later motion for a new trial. On appeal from the denial of his motion for a new trial, the Massachusetts Appeals Court concluded that it had implicitly "considered and rejected" this argument in his direct appeal. Barbosa II, 2013 WL 1103912, at *2. Whether or not the state courts actually dealt with the claim and so are entitled to deference, this claim fails even on de novo review. See Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (applying "de novo" review to a federal claim that "was never addressed by the state courts").[4]

_____

[4] This form of de novo review is not wholly equivalent to the de novo standard that obtains on direct appeal because "the claims of habeas petitioners, even on de novo review under Fortini, continue to be limited by the principles laid out in Teague v. Lane, 489 U.S. 288 (1989), and its progeny, which generally bar claims that require the application or announcement of 'new rules' of law." Kater v. Maloney, 459 F.3d 56, 58-59 (1st Cir. 2006). But that distinction is immaterial for present purposes.

Ineffective-assistance claims are governed by the Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), under which the defendant must prove two elements. "First, the defendant must show that counsel's performance was deficient," Strickland, 466 U.S. at 687, which requires showing that counsel's performance was not only substandard, but also "deficient in some way sufficiently substantial to deny him effective representation," Epsom v. Hall, 330 F.3d 49, 53 (1st Cir. 2003). "Second, the defendant must show that the deficient performance prejudiced the defense," Strickland, 466 U.S. at 687, which requires proof that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

Logan's ineffective-assistance claim most clearly fails on the prejudice prong. Regarding Harriet's minority, Andrade's testimony was not limited to Harriet's date of birth and, therefore, her age on the date of the incidents in question. Andrade testified that she was an "adolescent social worker" and that Harriet was "an adolescent assigned to [her] caseload." Andrade further testified that she had helped Harriet with school as part of her role as an adolescent social worker. And, in addition, the Commonwealth showed the jury a photograph of Harriet

- 10 -

that was taken roughly one year before Logan's arrest, which Logan does not argue depicted a girl other than a minor-aged one. Even if Andrade's testimony regarding Harriet's date of birth had been excluded as a result of a successful objection by defense counsel -- an issue we need not resolve here -- Logan cannot show a reasonable probability that a hearsay objection to Andrade's testimony about Harriet's date of birth would have changed the outcome of the trial.

B.      Sufficiency of the Evidence

Logan next contends that the Commonwealth introduced insufficient evidence to prove that Harriet engaged in prostitution or that she transferred any money to him. Logan challenged the sufficiency of the evidence on direct appeal. The Massachusetts Appeals Court -- applying its familiar sufficiency standard under Commonwealth v. Latimore, 393 N.E.2d 370 (Mass. 1979) -- rejected this claim. Barbosa I, 2010 WL 680349, at *1-2.

We have held that the Latimore test that the Appeals Court applied is functionally identical to the Jackson v. Virginia, 443 U.S. 307 (1979), standard the Supreme Court applies in sufficiency challenges, as Logan concedes. See Leftwich v. Maloney, 532 F.3d 20, 23-24 (1st Cir. 2008). The operative

question for determining sufficiency of the evidence is whether, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Latimore, 393 N.E.2d at 374 (quoting Jackson, 443 U.S. at 319). Under § 2254(d), Logan can prevail on this claim only if the Appeals Court unreasonably applied this standard. It did not.

There was more than enough evidence to prove that Harriet was engaged in prostitution and that Logan knew that fact. Police detectives observed Harriet and another young woman walking down a street in an area known to attract prostitution activity in a manner consistent with prostitution on the night of February 23, 2004. One of the detectives observed Harriet perform oral sex on a man in a parked truck on February 24. Harriet spoke briefly on a walkie-talkie after leaving the truck and before entering another car for approximately ten minutes, and Logan had a walkie-talkie on him when he was arrested, at which time Harriet was in his vehicle.

Logan argues that, even if Harriet was involved in prostitution, he could have been a john rather than a pimp. In support of this argument, he notes that his zipper was down when he was pulled over. But this evidence does not mean that the state

court unreasonably applied the facts to the law on this element. "[W]hen the record is fairly susceptible of two competing scenarios, the choice between those scenarios ordinarily is for the jury." Morgan v. Dickhaut, 677 F.3d 39, 48 (1st Cir. 2012) (citation and internal quotation marks omitted). Logan had a large amount of cash on him, a walkie-talkie (like Harriet), and was present on Beecham Street on both nights. This evidence allowed the jury to conclude that he was not merely Harriet's customer. The state court did not unreasonably apply the law in supporting the jury's choice of one view over the other.

The conclusion that Harriet transferred money to Logan was also reasonable. Not only did the detectives observe Harriet and her companion enter Logan's car on February 23, Harriet was also a passenger in Logan's car when Logan was arrested the following night. Upon being arrested in the gray Saab, Logan had $1,459 in cash on him, while Harriet had $32 in cash on her -- less than the $40 to $60 that Detective Hall testified was the average rate for oral sex from a prostitute in the area. See id. at 47 ("[A] conjecture consistent with the evidence becomes less and less a conjecture, and moves gradually toward proof, as alternative innocent explanations are discarded or made less likely." (citation and internal quotation marks omitted)).

C.       Detective Hall's Testimony

Logan's final arguments center on the testimony of Detective Hall. According to Logan, by testifying as an "expert" on the pimp-prostitute relationship and the local prostitution market, Detective Hall impermissibly based his testimony on hearsay by "recounting his conversations with . . . unidentified prostitutes." Logan contends that admitting this testimony amounted to a "flagrant[] violat[ion]" of his confrontation rights.

Logan's final claim falters right out of the gate; he concedes that these arguments were not raised on direct appeal.[5] That concession is fatal to his claim. Procedural default -- an adequate and independent state law rule -- bars federal habeas relief so long as it is both firmly established and regularly followed. See Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010). Massachusetts "regularly enforces the rule that a claim

_____

[5] This argument was first made in Logan's motion for a new trial. On review of the Superior Court's denial of that motion, the Massachusetts Appeals Court recognized that no argument about the hearsay basis of Detective Hall's expert opinion was timely raised, and it reviewed such claims "to determine whether a substantial risk of a miscarriage of justice was . . . created" as a consequence of the alleged error. Barbosa II, 2013 WL 1103912, at *1. The Appeals Court held that the introduction of this evidence did not work such miscarriage. Id. at *1-2.

not raised is waived."  Gunter v. Maloney, 291 F.3d 74, 79 (1st Cir. 2002).  Accordingly, we may only review this claim if Logan establishes "cause and prejudice" with respect to the procedural default, or "a fundamental miscarriage of justice."  See Horton v. Allen, 370 F.3d 75, 81 & n.3 (1st Cir. 2004).  Logan makes no credible argument on either front.

### III.

We affirm the district court's denial of Logan's habeas petition.