**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Anthony Dilboy

   v.                                                    Civil No. 13-cv-465-LM
                                                           Opinion No. 2015 DNH 181
Warden, New Hampshire
State Prison


**O R D E R**


Anthony Dilboy petitions for a writ of habeas corpus. See 28 U.S.C. § 2254. Before the court is respondent's motion for summary judgment. Dilboy objects. For the reasons that follow, the court holds respondent's motion for summary judgment in abeyance and orders further briefing.


## I. Background

After a jury trial, Dilboy was convicted of two counts of manslaughter and two counts of negligent homicide. See State v. Dilboy (Dilboy I), 160 N.H. 135, 139 (2010). The charges against Dilboy arose from a traffic accident in which he drove a pick-up truck through a red light at a high rate of speed and struck a car, killing both the driver of the car and a passenger in it. See id. at 140. Dilboy is currently serving sentences on his manslaughter convictions. See id. at 142.

After the collision, Dilboy told paramedics and police officers that he was addicted to heroin, that he had taken heroin approximately 48 hours before the accident, and that he had taken Klonopin approximately 17 hours before the accident. Five samples of Dilboy's blood and one sample of his urine "were tested at the State Police Forensics Toxicology Laboratory ['State Lab'] under the supervision of Dr. Michael Wagner, the assistant laboratory director." Dilboy I, 160 N.H. at 141. The State Lab's testing generated some amount of raw data in the form of charts and graphs and also resulted in the creation of multiple documents for each sample, including: (1) a blood sample collection form; (2) a transmittal slip; and (3) at least two signed reports.[1]

Before Dilboy's trial, he filed several motions to exclude both the documents generated by the State Lab and testimony concerning the results of the State Lab's testing, if that testimony were to be offered by anyone other than the criminalist who conducted the testing. To one of his motions, Dilboy attached the 14 reports that resulted from the analysis

_____

[1] For each of the six samples, the State Lab produced a signed report that listed the results of a toxicology test for ethanol and a signed report that listed the results of a drug screen. For five of the six samples, the State Lab produced a signed report that listed the results of a follow-up drug confirmation test.

2

of his five blood samples.  The State objected to Dilboy's motions and also moved the trial court to admit as evidence the documents that Dr. Wagner planned to rely upon when giving testimony at trial.

In an order disposing of multiple motions, Judge Fauver ruled that: (1) "Dr. Wagner [was] permitted to testify as to the blood sample test results," Pet'r's Obj., Ex. E (doc. no. 27-6), at 7 of 17; and (2) the State Lab blood sample collection forms and transmittal slips and the State Lab's blood test results were non-testimonial, see id. at 10 of 17, and, therefore, not subject to the requirements of the Confrontation Clause and Crawford v. Washington, 541 U.S. 36 (2004).  With respect to the blood test results, and in reliance upon State v. O'Maley, 156 N.H. 125 (2007), overruled in part by Dilboy I, 160 N.H. at 151-52, Judge Fauver explained that "the blood test results [were] non-testimonial but the interpretation of the results [was] testimonial."  Pet'r's Obj., Ex. E, at 12 of 17.

At Dilboy's trial, the State introduced blood sample collection forms and transmittal slips, and Dr. Wagner testified about the results of Dilboy's blood tests.  First, he "testified that he reviewed the test results for the defendant's samples." Dilboy I, 160 N.H. at 147.  Then, he "testified that the laboratory testing found a trace amount of Klonopin, trace

3

amounts of cocaine, and a quantifiable amount of a metabolite of cocaine in one sample of [Dilboy]'s blood, and cocaine, a metabolite of cocaine, morphine, and Oxycodone in [Dilboy]'s urine." Id. at 141. He also provided opinions concerning when Dilboy had ingested various substances and descriptions of "the physical and cognitive effects of [those] substances." Id. During his testimony, Dr. Wagner referred to what he called "the original data file." Trial Tr., Vol. 4, 771:3-4 (Jan. 18, 2008). While Dr. Wagner read into the record one sentence from one of the State Lab reports, see id. at 782:7-8, neither those reports nor any other documentary evidence of the results of Dilboy's blood or urine tests were admitted into evidence as trial exhibits.

On appeal to the New Hampshire Supreme Court ("NHSC"), Dilboy argued, among other things, "that the admission of Dr. Wagner's testimony about the test results for his blood and urine samples violated the Federal Confrontation Clause." Dilboy I, 160 N.H. at 146. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

The NHSC affirmed Dilboy's convictions. See Dilboy I, 160 N.H. at 151. In so doing, the court assumed that Dilboy's blood

4

test results were testimonial.  But, notwithstanding that assumption, the NHSC held that the admission of those test results through the testimony of Dr. Wagner did not violate the Confrontation Clause.  See id. at 150.  The United States Supreme Court granted certiorari, vacated the judgment, and "remanded [the case] to the Supreme Court of New Hampshire for further consideration in light of Bullcoming v. New Mexico, 564 U.S. ----, 131 S. Ct. 2705 (2011)."  Dilboy v. New Hampshire, 131 S. Ct. 3089 (2011) (parallel citation omitted).

On remand, the NHSC again affirmed Dilboy's convictions.  See State v. Dilboy (Dilboy II), 163 N.H. 760, 761 (2012).  The court framed the question before it this way:

> The threshold issue in deciding whether the Confrontation Clause has been violated is whether any "testimonial statements" of a non-testifying witness were admitted at trial.  See State v. Silva, 158 N.H. 96, 102 (2008).  Although in Dilboy I we assumed, without deciding, that the testimonial statements of non-testifying witnesses were conveyed through Wagner's testimony at trial, in light of Bullcoming, we believe we can no longer make such an assumption.  Accordingly, before we determine whether Wagner's testimony about the blood test results violated the Confrontation Clause, we must address the trial court's ruling that "the blood test results are non-testimonial."

Id. at 764-65 (parallel citation omitted).  In attempting to address that ruling, the NHSC observed that it had "no specific statements to review because the documents, or other evidence, that constitute the 'test results' were never submitted into the

5

record." Id. at 766. Then, it stated: "[W]ithout the 'test results' to review, and without any specific findings explaining what the 'test results' are, we must assume that the trial court made all findings necessary to support its ruling, and that those findings were supported by sufficient evidence." Id. (citations omitted). Similarly, the court determined that the lack of underlying documents precluded any review of Dr. Wagner's trial testimony. See id. at 766-67.

The New Hampshire Supreme Court concluded its analysis this way:

> Ultimately, there is no factual record that supports the defendant's theory of relief. See Appeal of Bosselait, 130 N.H. 604, 607 (1988). It is the defendant's obligation to state "explicitly the specific ground of objection," N.H. R. Ev. 103, and to provide this court with a record sufficient to decide the issue raised on appeal, State v. Parra, 135 N.H. 306, 309. To now address whether Wagner's testimony conveyed the testimonial statements of others would require us to either (1) speculate about what documents Wagner's testimony was based upon and whether he was testifying based upon his own interpretation of the raw data or merely repeating the statements of others, or (2) assume, as we did in Dilboy I, that his testimony conveyed the testimonial statements of others and then speculate as to whether his involvement was sufficiently close to justify his testimony, or whether his opinion was "independent," consistent with the concurrence in Bullcoming. Under the circumstances, we see no way to resolve the issue based upon such speculation, especially on an issue of first impression. Accordingly, because it was the defendant's burden to provide us with a record sufficient to decide his issues, we must affirm.

Id. at 767 (parallel citations omitted).

6

After the NHSC affirmed Dilboy's convictions for a second time, and denied his motion for reconsideration, Dilboy petitioned the Supreme Court for a writ of certiorari. The Court declined to issue one. Dilboy then petitioned this court for a writ of habeas corpus.

## II. The Legal Standard

A federal court may grant habeas corpus relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The power of the federal courts to grant habeas corpus relief to state prisoners has been significantly limited by passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Under that statute, when a prisoner brings a claim in federal court that "was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d),

> [f]ederal habeas relief may not be granted . . . unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, [28 U.S.C.] § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Harrington v. Richter, 562 U.S. 86, 100 (2011) (parallel citations omitted); see also Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015).

However, as a general rule, a federal court "will not review a § 2254 habeas claim when the state court's decision for that claim rests on a state law ground that is independent of the federal question and adequate to support the judgment." Powell v. Tompkins, 783 F.3d 332, 344 (1st Cir. 2015) (citing Martinez v. Ryan, 132 S. Ct. 1309, 1315-16 (2012); Hodge v. Mendonsa, 739 F.3d 34, 44 (1st Cir. 2013)). Thus, "the procedural default rule bars § 2254 habeas relief 'when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.'" Powell, 783 F.3d at 344 (quoting Coleman v. Thompson, 501 U.S. 722, 729-30 (1991)). Procedural default applies so long as the state procedural rule "is both firmly established and regularly followed." Logan, 790 F.3d at 72 (citing Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010)).

Moreover, a state court's "procedural bar ruling must stand in all but exceptional circumstances." Hodge, 739 F.3d at 44 (citing Downs v. Lape, 657 F.3d at 97, 107 (2d Cir. 2011); Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008)). The court of appeals for this circuit has described those "exceptional

circumstances" as an "'exorbitant application' of state law." Hodge, 739 F.3d at 44 (quoting Lee v. Kemna, 534 U.S. 362, 376 (2002)); cf. Gunter v. Maloney, 291 F.3d 74, 80 (1st Cir. 2002) ("A federal court considering a habeas corpus petition does not review, under the due process clause or otherwise, a state court's discretionary decision not to waive a procedural default under state law."). Finally, when a claim has been procedurally defaulted in state court, a federal court may review it only if the claimant "establishes 'cause and prejudice' with respect to the procedural default, or 'a fundamental miscarriage of justice.'" Logan, 790 F.3d at 72-73 (quoting Horton v. Allen, 370 F.3d 75, 81 & n.2 (1st Cir. 2004)).

### III. Discussion

In his motion for summary judgment, respondent makes only a passing reference to procedural default and argues that the New Hampshire Supreme Court's ruling that Dilboy failed to produce an adequate appellate record is based upon factual findings that are entitled to deference under 28 U.S.C. §§ 2254(d)(2) & (e)(1). The deference prescribed by §§ 2254(d)(2) & (e)(1) comes into play when a court reaches the merits of a habeas claim that has not been procedurally defaulted. When assessing a state court's procedural default ruling, federal courts in this circuit apply the "exorbitant application" standard

9

described in Hodge, 739 F.3d at 44.  In his brief, however, Dilboy follows respondent's lead and objects to summary judgment on grounds that the New Hampshire Supreme Court's ruling on procedural default was contrary to or involved an unreasonable application of Supreme Court precedent and/or was based upon an unreasonable determination of the facts.  On the other hand, Dilboy does not address the applicability to this case of the "cause and prejudice" or "miscarriage of justice" exceptions to the procedural default rule.

In short, neither respondent nor Dilboy has analyzed the question of procedural default under the appropriate legal standard.  As a result, the court is not well equipped to perform a meaningful analysis of the procedural default issue and requests further briefing from the parties.

## IV. Conclusion

For the reasons described above, the court holds respondent's motion for summary judgment, document no. 26, in abeyance and orders the parties to provide further briefing on the question of procedural default, consistent with the legal principles outlined above.  Accordingly, on or before October 21, 2015, respondent shall submit a brief addressing the question of whether Dilboy's claim has been procedurally defaulted.  Dilboy shall have thirty (30) days to respond.

10

While it is not required, the court will accept a reply no later than fifteen (15) days after Dilboy files his objection, and grants leave (but does not require) a surreply, which will be accepted no later than seven (7) days thereafter. Based upon that briefing, the court shall rule on respondent's motion for summary judgment.

     SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 21, 2015

cc:   Theodore M. Lothstein, Esq.
      Elizabeth C. Woodcock, Esq.