NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court-Concord Family Division
No. 2021-0199

IN RE GUARDIANSHIP OF B.C.

Argued: September 30, 2021
Opinion Issued: November 16, 2021

Rath, Young and Pignatelli, P.C., of Concord (Craig T. McMahon and Michael S. Lewis on the brief, and Craig T. McMahon orally), for the petitioner.

John M. Formella, attorney general (Laura E. B. Lombardi, senior assistant attorney general, on the memorandum of law and orally), for the New Hampshire Division for Children, Youth and Families.

DONOVAN, J. The petitioner appeals an order of the Circuit Court (Leonard, J.) denying her petition for guardianship of her great-nephew, a minor child, pursuant to RSA chapter 463 (2018 & Supp. 2020). On appeal, the petitioner challenges the circuit court's determination that she could not obtain guardianship because the New Hampshire Division for Children, Youth and Families (DCYF) already had legal custody of the child as a result of ongoing abuse and neglect proceedings, see RSA ch. 169-C (2014 & Supp. 2020). We conclude that an award of legal custody pursuant to RSA chapter 169-C does not preclude the appointment of a guardian pursuant to RSA chapter 463. Accordingly, we vacate and remand.

## I. Facts

The following facts are undisputed or are supported by the record. The child, B.C., is an infant. His parents are homeless and have substance use issues. Shortly after B.C.'s birth, DCYF received a report of concern regarding his welfare. Following an investigation, DCYF commenced abuse and neglect proceedings pursuant to RSA chapter 169-C. On February 5, 2021, the circuit court issued an ex parte order granting DCYF protective supervision of B.C. See RSA 169-C:6-a. As a result, B.C. was placed in foster care, where he remains.

On February 11, the petitioner filed a petition for guardianship of B.C. pursuant to RSA chapter 463, together with an ex parte emergency motion for immediate temporary guardianship. B.C.'s mother signed a form purporting to give her consent to the guardianship several days later. DCYF moved to dismiss the petition, noting that it had already "established a legal relationship with the child."

On March 18, after the adjudicatory hearing for the abuse and neglect case, the circuit court held a hearing on the guardianship petition. At the guardianship hearing, DCYF informed the court that it had not yet received the adjudicatory order. The court then obtained the adjudicatory order, which had been issued two days prior, and observed that DCYF had obtained "legal custody" of B.C. through the RSA chapter 169-C proceedings. The court also heard arguments on DCYF's motion to dismiss the guardianship petition. Relying upon RSA 169-C:4, III, DCYF argued, in part, that because it had already "establish[ed] a legal relationship with [B.C.]," the RSA chapter 169-C proceedings "take priority over this guardianship case." DCYF also stated that it was "working with [the petitioner] through [its] normal process and procedure to determine whether she would be an appropriate relative placement" for B.C. The petitioner objected to the motion to dismiss, both orally and by written motion, disagreeing with DCYF's interpretation of RSA 169-C:4, III.

On April 9, the circuit court dismissed the guardianship petition. In its order, the court stated, in part:

> In light of the orders in the [RSA chapter] 169-C case awarding legal custody of [B.C.] to DCYF, DCYF has the authority to determine where and with whom [B.C.] shall live. Based upon the information provided to the Court in the guardianship proceeding, [the petitioner] should be investigated as an appropriate relative placement for [B.C.] in the [RSA chapter] 169-C case.

2

On May 4, the petitioner filed an emergency motion for reconsideration. The court denied the motion, and this appeal followed.

## II. Standard of Review

Resolving the petitioner's appeal requires that we engage in statutory interpretation. Statutory interpretation presents a question of law, which we review de novo. See In re D.O., 173 N.H. 48, 52 (2020). In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. Id. We first examine the language of the statute, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id.

## III. Analysis

On appeal, the petitioner argues, in part, that the circuit court erred by "concluding that DCYF's prior legal relationship with B.C. precluded [her] appointment . . . as B.C.'s guardian." (Bolding and capitalization omitted.) According to the petitioner, RSA chapter 169-C "explicitly contemplates scenarios in which a minor child has a legal relationship with DCYF and a separate legal guardian." (Italics and capitalization omitted.)

RSA 169-C:3, XIV defines the term "guardian" as:

> [A] parent or person appointed by a court having jurisdiction with the duty and authority to make important decisions in matters having a permanent effect on the life and development of the child, and to be concerned about the general welfare of the child. Such duty and authority include but are not necessarily limited either in number or kind to:
>
> > (a) The authority to consent: (1) to marriage, (2) to enlistment in the armed forces of the United States, and (3) to major medical, psychiatric and surgical treatment, (4) to represent the child in legal actions; and (5) to make other decisions of substantial legal significance concerning the child;

3

(b) The authority and duty of reasonable visitation, except to the extent that such right of visitation has been limited by court order; and

(c) <u>The rights and responsibilities of legal custody except where legal custody has been vested in another individual or in an authorized agency</u>.

RSA 169-C:3, XIV (emphasis added).

"Legal custody," on the other hand, is defined as:

[A] status created by court order embodying the following rights and responsibilities unless otherwise modified by court order:

(a) The right to determine where and with whom the child shall live;

(b) The right to have the physical possession of the child;

(c) The right and the duty to protect and constructively discipline the child; and

(d) The responsibility to provide the child with food, clothing, shelter, education, emotional security and ordinary medical care provided that such rights and responsibilities shall be exercised <u>subject to the power, rights, duties and responsibilities of the guardian of the child</u> and subject to residual parental rights and responsibilities if these have not been terminated by judicial decree.

RSA 169-C:3, XVII (emphasis added).

Based, in part, upon the above-quoted statutory definitions, we conclude that the legislature intended that guardianship may, in some instances, exist concurrently with an award of legal custody to another individual or entity. The "duty and authority" of a guardian includes the "rights and responsibilities of legal custody <u>except</u> where legal custody has been vested in another individual or in an authorized agency." RSA 169-C:3, XIV (emphasis added). In such cases, the individual or agency with legal custody has the right to determine "where and with whom the child shall live," among other things. RSA 169-C:3, XVII(a). The guardian, on the other hand, maintains "the duty and authority to make important decisions in matters having a permanent effect on the life and development of the child, and to be concerned about the

general welfare of the child." RSA 169-C:3, XIV. Thus, contrary to the circuit court's conclusion, the fact that DCYF has "[t]he right to determine where and with whom [B.C.] shall live," RSA 169-C:3, XVII(a), does not preclude appointment of the petitioner as B.C.'s guardian.

Several provisions of RSA chapter 463, governing guardianships of minors, further support this conclusion. For example, RSA 463:12 provides, in relevant part: "[A] guardian of the person of a minor has the powers and responsibilities of a parent regarding the minor's support, care and education . . . ." RSA 463:12, I. Similar to RSA 169-C:3, XIV(c), the statute further provides: "A guardian may . . . take custody of the person of the minor and establish the minor's place of abode," provided that such actions are "consistent with the terms of any order . . . relating to the custody . . . of the minor." RSA 463:12, III(b). The language of RSA 463:12 therefore demonstrates that, rather than precluding guardianship altogether, an award of legal custody merely limits a guardian's ability to take custody of the child. Had the legislature intended otherwise, it would have said so expressly. See id.

Similarly, RSA 463:5, which establishes procedures for appointing guardians, requires petitions for guardianship to "set forth, so far as is known to the petitioner . . . [t]he existence of any . . . pending proceedings affecting the minor or the parents of the minor," including juvenile proceedings pursuant to RSA chapter 169-C. RSA 463:5, IV(c). Nothing in the plain language of RSA 463:5, or, for that matter, RSA chapter 463, suggests that the existence of such proceedings precludes the circuit court from appointing a guardian. We therefore conclude that the circuit court erred by denying the petitioner's guardianship petition based solely upon its finding that DCYF already had legal custody of B.C. pursuant to RSA chapter 169-C.

DCYF argues that dismissal of the petitioner's guardianship petition is consistent with RSA 169-C:4, III, which states: "When a custody award has been made pursuant to this chapter, said order shall not be modified or changed nor shall another order affecting the status of the child be issued." Even if we assume that the circuit court correctly found that DCYF had legal custody of B.C., and therefore "a custody award ha[d] been made" at the time of the guardianship hearing, id., we nonetheless conclude that RSA 169-C:4, III does not prohibit the appointment of a guardian in this case. Appointing a guardian pursuant to RSA chapter 463 does not modify or change custody orders, nor does it affect the child's status. As explained above, appointing a guardian pursuant to RSA chapter 463 does not necessarily authorize the guardian to take custody of the child. To the contrary, a guardian may only take custody if doing so is consistent with preexisting custody orders. See RSA 463:12, III(b); RSA 169-C:3, XIV(c). Therefore, the appointment of a guardian does not modify or change an award of custody made pursuant to RSA chapter 169-C. See RSA 169-C:4, III.

Nor would appointment of a guardian necessarily affect "the status of the child." RSA 169-C:4, III. Because RSA chapter 169-C does not define the word "status," we look to the dictionary for guidance as to its ordinary meaning. See State v. Ruff, 155 N.H. 536, 539 (2007). Webster's Third New International Dictionary defines the word "status" as "the condition . . . of a person that determines the nature of his legal personality, his legal capacities, and the nature of the legal relations to the state or to other persons into which he may enter." Webster's Third New International Dictionary 2230 (unabridged ed. 2002). Similarly, Black's Law Dictionary defines the word "status" as "[a] person's legal condition, whether personal or proprietary; the sum total of a person's legal rights, duties, liabilities, and other legal relations, or any particular group of them separately considered." Black's Law Dictionary 1542 (9th ed. 2009). These definitions are not dispositive, however, as they offer little guidance as to the meaning of the word "status" in RSA 169-C:4, III. Therefore, because we construe the meaning of statutory language "not in isolation, but together with all associated sections," our interpretation of "status" is informed by its use elsewhere in the statute. K.L.N. Construction Co. v. Town of Pelham, 167 N.H. 180, 185 (2014) (quotation omitted).

RSA 169-C:3 identifies four statuses that courts may designate for children subject to abuse and neglect proceedings: legal custody; legal supervision; protective custody; and protective supervision.[1] See RSA 169-C:3, XVII (defining "legal custody," in part, as "a status created by court order embodying" certain enumerated rights and responsibilities (emphasis added)); RSA 169-C:3, XVIII (defining "legal supervision," in part, as "a legal status created by court order wherein the child is permitted to remain in his home under the supervision of a child placing agency" (emphasis added)); RSA 169-C:3, XXIV (defining "protective custody," in part, as "the status of a child who has been taken into physical custody by a police officer or juvenile probation and parole officer" (emphasis added)); RSA 169-C:3, XXV (defining "protective supervision" as "the status of a child who has been placed with a child placing agency pending the adjudicatory hearing" (emphasis added)).

We conclude that guardianship does not affect the status at issue here: legal custody. The status of "legal custody" embodies, among other things, "[t]he responsibility to provide the child with food, clothing, shelter, education, emotional security and ordinary medical care provided that such rights and responsibilities shall be exercised subject to the power, rights, duties and responsibilities of the guardian of the child." RSA 169-C:3, XVII(d) (emphasis added). The status of "legal custody" is, therefore, inherently limited by "the power, rights, duties and responsibilities" of the child's guardian. Id. Moreover, a guardian may only "take custody of the person of the minor and

---

[1] The only other use of the word "status" in RSA chapter 169-C is not applicable here. See RSA 169-C:24, I ("The court shall conduct an initial review hearing within 3 months of the dispositional hearing to review the status of all dispositional orders issued under this chapter.").

6

establish the minor's place of abode" if such actions are consistent with any preexisting custody orders relating to the child. RSA 463:12, III(b); see RSA 169-C:3, XIV(c). If an individual or authorized agency other than the guardian has "legal custody" of the child, the guardian has no authority to remove the child from his or her home, foster home, or other residential placement. See RSA 463:12, III(b). Because DCYF has not identified a "status," other than "legal custody," that may apply here, we conclude that appointing the petitioner as B.C.'s guardian will not affect B.C.'s "status," in the context of this case. Therefore, RSA 169-C:4, III does not preclude guardianship here. Accordingly, we vacate and remand for the court to consider the merits of the guardianship petition.

Vacated and remanded.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.